[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, Slip Opinion No. 2016-Ohio-1506.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-1506

BOARD OF EDUCATION OF THE WESTERVILLE CITY SCHOOLS ET AL., APPELLEES, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, Slip Opinion No. 2016-Ohio-1506.]**

*Taxation—Real-property valuation—Even when a sale is not presumed recent, an appraiser may use it as a comparable, after making necessary adjustments, when determining subject property's value—Board of Tax Appeals has discretion to consider remote sales, and determining their probative value as adjusted by the appraiser lies within BTA's fact-finding discretion—BTA's decision affirmed.*

(No. 2014-1036—Submitted December 15, 2015—Decided April 13, 2016.)

APPEAL from the Board of Tax Appeals, Nos. 2012-1763, 2012-1764, and 2012-1765.

_____

**Per Curiam.**

{¶ 1} This case involves a dispute over the value of three undeveloped residential lots in the Westerville City School District. The lots are located in Franklin County, near Hoover Reservoir.

{¶ 2} The property owners filed complaints with the Franklin County Board of Revision ("BOR"), seeking reductions in the county auditor's tax-year-2011 valuations of all three parcels. In support, they introduced the testimony and written appraisal report of Ralph F. Berger, MAI. The BOR adopted Berger's opinion of value and granted the requested reductions.

{¶ 3} The Westerville City School District Board of Education ("school board") appealed to the Board of Tax Appeals ("BTA"), where it introduced the testimony and written appraisal report of Thomas D. Sprout, CPA. Relying heavily on the 2007 sale of a nearby lot, Sprout arrived at higher valuations for the parcels than either Berger or the auditor. The owners countered with testimony from Berger and several other witnesses and introduced additional evidence supporting lower valuations. The BTA adopted Sprout's valuations.

{¶ 4} The owners now appeal, asking this court to hold that the BTA acted unlawfully and unreasonably by finding that the school board met its burden of proof at the BTA hearing. The owners also argue that the BTA violated Article XII, Section 2 of the Ohio Constitution, which requires that property "be taxed by uniform rule according to value." For the reasons below, we reject the owners' claims and affirm the BTA's decision.

FACTS

{¶ 5} The subject properties are three undeveloped residential lots located near Hoover Reservoir in the Westerville School City District in Franklin County. Parcel No. 110-005931 ("Lot 1") is 10.62 acres, Parcel No. 110-005929 ("Lot 2") is 5.854 acres, and Parcel No. 110-000113 ("Lot 3") is 5.63 acres. Lots 1 and 3 are

2

owned by Elizabeth P. Henry, and Lot 2 is owned by Lorraine and Bruce R. Chase ("the Chases").

### *2011 tax valuation and BOR proceedings*

**{¶ 6}** In tax year 2011, a sexennial reappraisal year in Franklin County, the county auditor valued the properties as follows: Lot 1, $709,700; Lot 2, $676,800; and Lot 3, $566,900.

**{¶ 7}** On March 16, 2012, Henry and the Chases filed complaints with the BOR requesting reductions. The school board filed countercomplaints seeking to retain the auditor's valuations.

**{¶ 8}** On May 2, 2012, the BOR consolidated the three cases and held a hearing. The owners presented testimony and a written appraisal report from appraiser Ralph Berger. The school board cross-examined Berger but did not present any witnesses or exhibits.

**{¶ 9}** According to Berger, the subject properties overlook Hoover Reservoir, are heavily wooded, and have rolling topography. Berger opined that the highest and best use of each site was as an acreage home site for a single-family dwelling. He indicated that the lots had access to public electric and telephone lines but would need private water and aeration.

**{¶ 10}** Berger used the sales-comparison approach to determine the value of each lot. He explained that it was difficult to find appropriate comparables because there were no recent lot sales in the immediate area; only a few comparable high-end acreage home sites had sold in Franklin and Delaware Counties during the last three years. Berger noted that a property located between Lots 1 and 2— the "Harker tract"—sold for $775,000 in July 2007, but he did not consider that sale probative because market conditions had changed substantially.

**{¶ 11}** Berger selected four nearby sales from 2009 and 2010 as comparables. He reviewed aerial photographs of each property and used public records and land-valuation services to verify the sales. Two of the four properties

included woods and a pond, but the others did not have any water features. Berger made adjustments and arrived at valuations of $380,000 for Lot 1, $350,000 for Lot 2, and $340,000 for Lot 3.

{¶ 12} On May 25, 2012, the BOR issued a decision letter accepting Berger's valuations and awarded the requested reductions.

### BTA proceedings

{¶ 13} The school board appealed to the BTA, which held a hearing on September 16, 2013.

{¶ 14} At the hearing, the school board introduced the testimony and written appraisal report of Thomas Sprout. Sprout opined that the highest and best use of the properties was "for residential development" by a single owner. He indicated that Lots 1, 2, and 3 had "all necessary utilities" and said that he believed riparian rights were available to their owners. Sprout also noted that, as of the tax-lien date, January 1, 2011, Lots 1, 2, and 3 were listed on the multiple-listing service for prices of $1,539,900, $927,700, and $827,610, respectively.

{¶ 15} Like Berger, Sprout used the sales-comparison approach. He explained that it was difficult to locate appropriate comparables because the subject properties are "unique" in light of their "access to Hoover Reservoir." Because Sprout believed that the market had remained relatively stable for sales of higher-end residential lots since 2006 in spite of the recession, he looked to older sales to identify comparable properties.

{¶ 16} Sprout selected six comparables and verified the transaction data of five of them with at least one party to the sale. According to Sprout, the 2007 sale of the Harker tract provided the best indication of value for the subject properties. However, because that sale occurred during a "superior economic period," he made a downward adjustment. Sprout's remaining five comparables were subdivision properties that had all utilities available. Two of the properties were located on water, one was on a golf course, one had water views, and two were partially

wooded.  Sprout made adjustments to each comparable and arrived at valuations of $940,000 for Lot 1, $760,000 for Lot 2, and $705,000 for Lot 3.

{¶ 17} The owners defended the BOR's valuations, introducing new testimony from Berger and three additional witnesses, Berger's appraisal report, and evidence of legal and regulatory changes that might impact the development of the lots.

{¶ 18} Berger's testimony at the BTA echoed his testimony before the BOR.  He described his appraisal and his selection of recent comparable sales.  Berger again opined that the sale of the Harker tract was not a good comparable because the market had changed significantly since 2007.  He testified that his own comparables required fewer adjustments than Sprout's.

{¶ 19} Gary R. Smith, the appraisal director for Franklin County, testified that he met with George Henry, the husband of Elizabeth Henry, about the three parcels in 2011.  Smith was not personally involved in determining the value of the properties; the county had hired a contract appraiser.  However, he testified about the property record cards for the three lots.  Each card indicates the property's current market value, the date when data was collected about the property, and the date that an appraisal value was entered into the county's system.  Smith explained that although the cards do not record the actual date of appraisal, if a card indicates a value in the "final value conclusion box," then the property was appraised.

{¶ 20} Bob Binns testified that he assists Berger with subdivision appraisals and that since 1980, he has published a market report that tracks new home sales, lot sales, and building-permit activity for central Ohio.  According to Binns, relatively few high-end residential lots sold in the area during the ten years preceding the tax-lien date.  He identified the following lot sales that met or exceeded sales prices of $300,000, $500,000, and $700,000:

Central Ohio residential lot sales from 2000 to 2010

|          | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 |
|----------|------|------|------|------|------|------|------|------|------|------|------|
| $300,000+ | 6 | 4 | 5 | 10 | 8 | 11 | 24 | 16 | 15 | 8 | 8 |
| $500,000+ | 2 (prior to 2006) | | | | | | 6 | 4 | 0 | 1 | 0 |
| $700,000+ | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 3 | 0 | 0 | 0 |

**{¶ 21}** Finally, George Henry testified about the properties. Henry explained that he and his wife purchased all three lots (as well as the Harker tract) during the 1990s. The Henrys still own Lots 1 and 3, but they sold Lot 2 to the Chases before 2000, and they sold the Harker tract in 2007. According to Henry, his wife and the Chases listed their lots for sale for at least seven or eight years without receiving any offers; they set the prices very high and did not really expect to sell unless a unique buyer came along.

**{¶ 22}** Henry testified that when he and his wife bought the properties, they expected that sewer lines would eventually be extended nearby. Years later, the nearest sewer line is at least one and one-half miles away, and the nearest water line is more than one mile away. Henry stated that in light of recent legal and regulatory changes, it would be expensive and difficult to obtain the necessary local, state, and federal approval to install these systems. However, Henry admitted on cross-examination that he had never actually sought approval for a sewer system on the property. And he was not aware of the buyers of the Harker tract having difficulty getting utilities when they built on their lot, although he believed that requirements were more lax at that time.

**{¶ 23}** On May 23, 2014, the BTA issued a decision reversing the BOR. The BTA considered the parties' competing appraisals and found Sprout's valuations more persuasive. In its decision, the BTA explained that "[u]nlike Mr. Berger, Mr. Sprout utilized sales of similar lots in the Hoover area, including the Harker sale, which he properly adjusted to account for changes in market

conditions." BTA Nos. 2012-1763 through 2012-1765, at 3 (May 23, 2014). The BTA also noted that Sprout was more thorough than Berger in verifying the arm's-length nature of his comparables and opined that it was appropriate for Sprout to rely on comparable sales that "bracketed" the tax-lien date. *Id.* at 3 and fn. 3. Finally, in spite of the owners' evidence about sewer systems, the BTA did not find that legal and regulatory changes had affected the values of the subject properties. The BTA adopted Sprout's valuations: Lot 1, $940,000; Lot 2, $760,000; and Lot 3, $705,000.

{¶ 24} The owners appealed the BTA's decision to this court.

### ANALYSIS

{¶ 25} On appeal, the owners present six propositions of law:

Proposition of Law No. 1: Under *Akron City School Dist. Bd. of Edn.*, 139 Ohio St. 3d 92 (2014), a sale of a property more than twenty-four months prior to the lien date does not control over a more recent appraisal as part of an auditor's six-year reappraisal of that property. Therefore, a sale of a different property more than twenty-four months prior to the lien date likewise cannot control over a more recent appraisal of the subject property as part of an auditor's six-year reappraisal. The BTA acts unreasonably and unlawfully, and violates this Court's precedent, where it weighs the remote sale of another property above the recent reappraisal of the auditor.

Proposition of Law No. 2: Where market conditions have materially changed, but the evidence does not allow the BTA to conclude the degree to which the change in market conditions impacts the sale price, then the party appealing to the BTA has not met its burden of proof.

Proposition of Law No. 3: There is a rebuttable presumption that an actual sale of property reflects the property's true value and is an arm's-length transaction. Given that presumption, if the appellee before the Board of Tax Appeals provides evidence of recent comparable sales, the BTA must not discredit those sales unless the appellant before it provides evidence to rebut the presumption of an arm's-length transaction.

Proposition of Law No. 4: Where an appraiser's appraisal of a property is based on factual errors about the material characteristics of the property, it is unreasonable and unlawful for the Board of Tax Appeals to find the appraisal competent and probative.

Proposition of Law No. 5: When using the market approach to valuation, to be competent and reliable evidence, the comparable sales utilized by the appraiser must be close in time and similarly situated in terms of the degree of development of the property.

Proposition of Law No. 6: In determining the value of vacant undeveloped wooded land zoned for residential purposes, evidence of the number of such sales in various price ranges in the general geographic area in the decade prior to the tax lien date is reliable and probative evidence of market conditions for such tracts, and such evidence must be considered by the Board of Tax Appeals.

We will consider these propositions out of order for ease of analysis.

### *Burdens and standard of review*

{¶ 26} "In reviewing a decision of the BTA, we do not sit as 'a super BTA or a trier of fact de novo.' " *RNG Properties, Ltd. v. Summit Cty. Bd. of Revision*, 140 Ohio St.3d 455, 2014-Ohio-4036, 19 N.E.3d 906, ¶ 18, quoting *EOP-BP*

*Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 17. To be sure, this court "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001). However, the BTA's factual findings are entitled to deference as long as they are supported by "reliable and probative" evidence in the record. *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 152, 648 N.E.2d 483 (1995). We "will not disturb" a valuation determination by the BTA "unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus.

{¶ 27} Perhaps most significant in this context is this court's recognition of the BTA's "wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come before it." *EOP-BP Tower* at ¶ 9. Indeed, "[a]bsent a showing of an abuse of discretion," such determinations by the BTA "will not be reversed by this court," *id.* at ¶ 14, and a claimed abuse of discretion requires a showing that the BTA's " 'attitude is unreasonable, arbitrary or unconscionable,' " *J.M. Smucker, L.L.C. v. Levin*, 113 Ohio St.3d 337, 2007-Ohio-2073, 865 N.E.2d 866, ¶ 16, quoting *Strongsville Bd. of Edn. v. Zaino*, 92 Ohio St.3d 488, 490, 751 N.E.2d 996 (2001).

{¶ 28} "When cases are appealed from a board of revision to the BTA, the burden of proof is on the appellant, whether it be a taxpayer or a board of education, to prove its right to an increase or decrease from the value determined by the board of revision." *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 566, 740 N.E.2d 276 (2001). In order to prevail before the BTA, the appellant "must present competent and probative evidence * * *; it is not entitled to a reduction or an increase in valuation merely because no evidence is presented against its claim." *Id.* If the parties present competing appraisals at the BTA, "[t]he weighing of evidence and the assessment of credibility as regards

both of the appraisals are the statutory job of the BTA," and that body "is vested with wide discretion" in carrying out that function. *EOP-BP Tower* at ¶ 9.

### The school board's evidence of value

{¶ 29} The owners argue that the BTA acted unreasonably and unlawfully when it adopted Sprout's opinions of value, because (1) Sprout improperly relied on the 2007 sale of the Harker tract as a comparable, (2) his other comparables were temporally remote and not similarly situated to the subject properties, (3) he did not account for new state and local sewer and environmental regulations, and (4) he made material factual errors about the subject properties.

### *Recency of the Harker sale*

{¶ 30} In proposition of law No. 1, the owners argue that the BTA violated *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 139 Ohio St.3d 92, 2014-Ohio-1588, 9 N.E.3d 1004, when it adopted Sprout's valuations, because Sprout relied heavily on the sale of the Harker tract as a comparable even though it preceded the tax-lien date by more than 24 months.

{¶ 31} Former R.C. 5713.03 required county auditors to "consider the sale price" of a property as its "true value for taxation purposes" provided that (1) the sale was at arm's length and (2) it occurred "within a reasonable length of time, either before or after the tax lien date." Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, 2665, 2722. In *Akron Bd. of Edn.*, this court considered whether a particular sale was recent for purposes of former R.C. 5713.03. The sale had occurred more than 24 months prior to the tax-lien date, the tax-lien date was in a reappraisal year, and the reappraisal did not rely on the sale. *Akron Bd. of Edn.* at ¶ 3-4. Under those circumstances, we held that the sale was not presumed to be recent. *Id.* at ¶ 30.

{¶ 32} The owners now contend that under *Akron Bd. of Edn.*, the 2007 sale of the Harker tract (which the county reappraised in 2011) is not the presumptive value of that property for tax year 2011 and that Sprout could not rely on that sale. But the *Akron* doctrine bears only on whether the sale price of a property is

sufficiently recent to be accepted as *that* property's true value; it has no bearing on an appraiser's ability to rely on a particular comparable to value a property. The validity of every comparable turns on whether, and to what extent, the sale is in fact comparable, and an appraiser must make adjustments to account for differences— including market changes over time. *See* International Association of Assessing Officers, *Property Assessment Valuation* 97 (2d Ed.1996) ("When comparing the sold properties to the subject being appraised, the assessor must consider similarities and differences that affect value," including factors such as "[f]inancing terms, market conditions, location, and physical characteristics"). In light of these adjustments, even when a sale is not presumed recent under the *Akron* doctrine, an appraiser may use it as a comparable when determining the subject property's value.

{¶ 33} Next, the owners argue that Sprout did not adequately adjust for market changes after 2007. "In a depressed economy, recent sales are often difficult to find." Appraisal Institute, *The Appraisal of Real Estate* 381 (10th Ed.1992). Accordingly, appraisers may discount older sales "over a reasonable holding period, corresponding to the length of time estimated for the market segment to recover." *Id*. Here, Sprout opined that the market did not change substantially for these types of properties during the time between the Harker sale, on July 16, 2007, and the tax-lien date, and he indicated (though without explaining how) that he made the necessary adjustments to account for market changes. And the BTA expressly found that Sprout "properly adjusted" his comparables "to account for changes in market conditions." BTA Nos. 2012-1763 through 2012-1765, at 2-3. We defer to that factual determination.

{¶ 34} Invoking R.C. 5715.012, the owners also argue that the BTA erred by relying on an appraisal that cited comparable sales that occurred more than three years prior to the tax-lien date. R.C. 5715.012 requires the tax commissioner to study the ratio between the assessments and actual sale prices of properties, relying

on data from "the three years prior to the tax year" in question. "The ratio between the total assessed value of properties included in the study and the sales prices of those properties is * * * the average percentage of fair market value at which properties sold within a given year were assessed for taxation." *J.C. Penney Properties, Inc. v. Franklin Cty. Bd. of Revision*, 10th Dist. Franklin Nos. 91AP-872 through 91AP-874, 1992 WL 214365, *6 (Aug. 27, 1992). The studies are a tool for "determining the common level of assessment * * * within the counties for the purpose of equalization." *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 26 Ohio St.2d 161, 167, 270 N.E.2d 342 (1971).

{¶ 35} The owners reason that if the tax commissioner cannot rely on sales outside a three-year window for a sales-assessment ratio study, then it would be "illogical" for the BTA to rely on an appraisal report that uses sales older than three years to determine a property's value. But it is the owners' logic that is flawed, because the BTA's duty and authority in an appeal from a board of revision are not subject to R.C. 5715.012, nor do the statutes providing for BTA appeals impose a three-year limitation on the data to be considered. R.C. 5717.01 specifically empowers the BTA either to decide an appeal on the existing record or to "order the hearing of additional evidence," with no such restriction. It follows that the BTA has discretion to consider remote sales and that determining their probative value as adjusted by the appraiser lies within the BTA's fact-finding discretion. Our review of the BTA's determination is constrained by the highly deferential abuse-of-discretion standard, and no such abuse has been demonstrated here.

{¶ 36} For these reasons, we reject the owners' first proposition of law.

*Changed legal circumstances*

{¶ 37} In their second proposition law, the owners argue that the school board failed to meet its burden, as the appellant at the BTA, "to prove its right to an increase or decrease from the value[s] determined by the board of revision," *Columbus Bd. of Edn.*, 90 Ohio St.3d at 566, 740 N.E.2d 276, because it did not

give the BTA enough information to determine the extent to which legal and regulatory changes affected the values of the subject properties.

{¶ 38} During the BTA hearing, the owners presented evidence of 2010 amendments to state and local laws that would arguably make it more difficult and expensive to install sewer systems on the subject properties.[1]  *See* R.C. 3718.023 and 3718.025 (effective Sept. 17, 2010); Franklin County Health District Regulations 720-08 (effective Sept. 14, 2010).  They also introduced evidence of 2008 revisions to the Federal Emergency Management Agency's flood-zone maps, which might further complicate the construction of sewage-treatment systems.  The BTA considered this evidence and, in its decision, stated that it was "unable to conclude, based on the record before us, whether such change[s] would have affected the sale price, and to what degree."  BTA Nos. 2012-1763 through 2012-1765, at 2-3, fn. 2.

{¶ 39} Although framed as a legal question about burdens of proof, this proposition of law essentially asks us to reweigh the BTA's factual determinations. The school board's burden at the BTA was to "present competent and probative evidence" supporting its requested changes in valuation.  *Columbus Bd. of Edn.*, 90 Ohio St.3d at 566, 740 N.E.2d 276.  The board presented Sprout's testimony and appraisal in support of its requested valuations, and the BTA found that evidence probative and persuasive.  In doing so, the BTA necessarily concluded that in spite of the possible effect that the aforementioned legal changes might have had on the values of the properties, the mere possibility did not establish that Sprout's adjustment failed to account for these changes.  Nothing in the record affirmatively demonstrates that the BTA's finding was unreasonable, nor has an abuse of discretion been shown.  *See EOP-BP Tower*, 106 Ohio St.3d 1, 2005-Ohio-3096,

---

[1] The owners did not present this information at the BOR, and their appraiser did not specifically discuss the impact of these legal and regulatory changes on the values of the subject properties.

829 N.E.2d 686, at ¶ 9 (the BTA has broad discretion to determine what evidence should be relied upon).

{¶ 40} We defer to the BTA's factual determination and reject the owners' second proposition of law.

*Sprout's other comparables*

{¶ 41} In proposition of law No. 5, the owners contend that Sprout's appraisal is not reliable or probative because his remaining five comparables are "temporally remote" and "share virtually nothing in common with [the subject] properties."

{¶ 42} First, as to the question of recency, Sprout's comparables include one sale in 2006, the Harker sale in 2007, one sale in 2009, and three sales in 2012. The timing of the Harker sale is discussed above, and there is no need to focus on the 2006 sale here because Sprout testified that he placed little reliance on that comparable. Thus, the merits of this argument turn on Sprout's use of one comparable from 2009 and three comparables from 2012.

{¶ 43} The BTA "may consider pre- and post-tax lien date factors"—such as comparable sales—"that affect the true value of the taxpayer's property on the tax lien date." *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision*, 66 Ohio St.2d 398, 422 N.E.2d 846 (1981), paragraph two of the syllabus. Sprout testified that he was looking for comparables for a unique type of property and that as a result, he considered sales over a broader time period than he ordinarily would. Here, the BTA could reasonably conclude that 2009 and 2012 are close enough to the tax-lien date that Sprout could use these sales as comparables.

{¶ 44} Second, the owners argue that these five comparables were not valid because unlike the subject property, they were all located "in developed subdivisions with broad amenities and full utilities." The owners fault Sprout for failing to address these differences. But Sprout testified that he made downward adjustments to account for (1) the smaller site size of the subdivision properties,

14

which typically "provid[e] a higher per-unit basis," (2) the "superior location" of some of the comparables, and (3) the fact that the subject properties do not presently have water or sewer services. Given this testimony, the BTA could reasonably conclude within the scope of its broad discretion that Sprout's comparables were probative.

{¶ 45} For these reasons, we defer to the BTA's factual determinations and reject proposition of law No. 5.

*Sprout's alleged factual errors*

{¶ 46} In proposition of law No. 4, the owners argue that the BTA erred by relying on Sprout's appraisal because, they say, he erroneously believed that the subject properties were all on the waterfront and that they were "serviced by all necessary utilities."

{¶ 47} Sprout's testimony was more nuanced than the owners suggest. As to location, Sprout stated that the properties all "back up [to] or abut" Hoover Reservoir. Sprout attached aerial photographs to his appraisal report showing that each property has a view of the water. And, as George Henry testified, the owners could enter into agreements with the Franklin County Department of Parks and Recreation to receive direct waterfront access.

{¶ 48} With respect to utilities, Sprout's written report did indicate that the properties were "serviced by all necessary utilities." However, in his testimony, Sprout explained that the properties had "[e]lectric" and "may or may not have gas." He further indicated that an owner could "put a well on the site" and that he believed it would be possible to "put a leach bed on the property and allow for a septic system." He therefore adjusted for comparables that had more utilities available.

{¶ 49} In light of the above, the owners have not established that Sprout's valuations turned on material factual errors about the subject properties. Sprout's testimony clarified his understanding of the properties' location and the utilities

available. And because his explanations were not clearly inconsistent with his valuations, the BTA could reasonably adopt those values. We therefore reject the owners' fourth proposition of law.

### *The owners' appraisal*

{¶ 50} In proposition of law No. 3, the owners argue that the BTA erred by finding Sprout's valuations more persuasive than those of Berger, the owners' appraiser, on the basis of Sprout's having "more thoroughly verified the accuracy and arm's length nature of the comparable sales he utilized." BTA Nos. 2012-1763 through 2012-1765, at 3. Berger did not verify the sale data of any of his four comparables with a party to the transaction, while Sprout verified the sale data of five of his six comparables with a party to the transaction.[2]

{¶ 51} The owners argue that Berger's comparables were just as valid as Sprout's, regardless of how he had verified the sales. In support, the owners again cite former R.C. 5713.03 and the "rebuttable presumption" "that [a] sale price reflects the true value of property," unless the party opposing reliance on the sale can establish that the transaction was either not recent or at arm's-length. *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 78 Ohio St.3d 325, 327, 677 N.E.2d 1197 (1997). The owners reason that the same presumption applies (or should apply) to sales used as comparables in an appraiser's market analysis of value.

{¶ 52} Contrary to the owners' claims, a rebuttable presumption arises that a sale price reflects a property's true value *only* in the context of valuing *that* property. This presumption is rooted in a constitutional and legislative policy judgment, enacted in former R.C. 5713.03, that a recent sale price of the subject property is the best evidence of the property's value, provided that the transaction was voluntary and at arm's length. *See, e.g.*, *Worthington City Schools Bd. of Edn.*

---

[2] Sprout was unable to verify the sixth sale, so he assigned little weight to that comparable.

*v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 28-29; *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13; *see also State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 411-412, 195 N.E.2d 908 (1964).

{¶ 53} But no similar presumption applies to sales used as comparables. Any time an appraiser relies on comparables to value a property, it is necessary to evaluate whether the properties are in fact comparable, whether adjustments need to be made, and the extent of the adjustments. And in order to determine the weight to be given to a comparable, it is necessary to know whether the sale was a voluntary, arm's-length transaction. Accordingly, the BTA has repeatedly stressed that appraisers should verify transaction information with at least one party to a sale before using it as a comparable. *See, e.g.*, *Hervey v. Cuyahoga Cty. Bd. of Revision*, BTA No. 2012-Q-3114, 2013 WL 4680872, *2 (Aug. 20, 2013); *McCallie v. Medina Cty. Bd. of Revision*, BTA Nos. 2012-Q-3112 and 2012-Q-3113, 2013 WL 6833612, *2 (Aug. 21, 2013); *see also* Appraisal Institute, *The Appraisal of Real Estate* 304 (13th Ed.2008). Verification ensures that records of the transaction are accurate, and that provides " 'insight into the motivation behind each transaction.' " *Hervey* at *2, quoting Appraisal Institute at 304.

{¶ 54} Here, the BTA reasonably found that Sprout's appraisal was more probative than Berger's, in part because Sprout had more thoroughly verified his comparables. We reject proposition of law No. 3.

### *The uniform-rule provision*

{¶ 55} Article XII, Section 2 of the Ohio Constitution provides that "[l]and and improvements thereon shall be taxed by uniform rule according to value." In their final proposition of law, the owners assert that the BTA's decision violates this provision for two reasons.

**{¶ 56}** First, the owners argue that the provision requiring taxation by uniform rule was violated because, they say, the county auditor did not appraise the subject properties in tax year 2011, a sexennial reappraisal year in Franklin County. County auditors are required to "view and appraise or cause to be viewed and appraised at its true value in money, each lot or parcel of real estate" at least once every six years. R.C. 5713.01(B).

**{¶ 57}** Here, there is no reason to doubt that the county auditor complied with this requirement. Under the presumption of regularity, this court "presume[s] that a public official means what he says and that he is duly performing the function that the law calls upon him to perform." *Toledo v. Levin*, 117 Ohio St.3d 373, 2008-Ohio-1119, 884 N.E.2d 31, ¶ 28; *see also Gaston v. Medina Cty. Bd. of Revision*, 133 Ohio St.3d 18, 2012-Ohio-3872, 975 N.E.2d 941, ¶ 16 (a "presumption of regularity * * * attaches to official actions"); *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 31. And the record bolsters that presumption here. The property record cards for the three subject properties each indicate a final value in the appropriate box. Gary Smith, Franklin County's appraisal director, testified that these boxes are blank until an appraiser populates them. With respect to each card, he stated that "the fact that it has a value in the final value conclusion box at the bottom of the card tells me that it has been appraised." Thus, the BTA reasonably concluded that the properties had been reappraised.

**{¶ 58}** Second, the owners argue that the BTA violated the uniform-rule provision by relying on Sprout's appraisal even though the owners' evidence about the residential housing market in central Ohio proved (so the owners allege) that the appraisal was not competent or reasonable. Here, Sprout opined that the overall state of the economy was not necessarily representative of the market for the subject properties, because a relatively small pool of buyers is interested in purchasing an undeveloped lot on which to build an estate-style, single-family home. The owners

argue that Sprout's opinions of value were completely undermined by the testimony of Bob Binns, the appraiser who assisted Berger, about area residential-lot sales during the preceding ten years. But the BTA has discretion to determine the probative character of an appraisal, and here it concluded that Sprout's appraisal was the best evidence of the properties' values. *See Cummins Property Servs.*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, at ¶ 25. Moreover, the uniform-rule provision "envisions" reliance on appraisals to determine property value when there is no determinative sale price of the subject property. *Id.*; *see also State ex rel. Park Invest. Co.*, 175 Ohio St. at 411-412, 195 N.E.2d 908. Thus, the BTA did not violate the uniform-rule provision in this regard.

{¶ 59} We reject proposition of law No. 6.

### CONCLUSION

{¶ 60} For the foregoing reasons, we affirm the BTA's decision.

Decision affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

————————————

Law Offices of John C. Camillus, L.L.C., and John C. Camillus; and George L. Henry, for appellants Elizabeth P. Henry, Bruce R. Chase, and Lorraine Chase.

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, and Kelley A. Gorry, for appellee Board of Education of the Westerville City Schools.

————————————