[Cite as *BT Property, L.L.C. v. Franklin Cty. Bd. of Revision*, 2017-Ohio-2769.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

BT Property LLC,                                   :

     Appellant/Cross-Appellee,      :
                                No. 16AP-449

v.                                                :     (BTA No. 2015-308)
                                No. 16AP-450

Franklin County Board of Revision et al.,         :     (BTA No. 2015-225)
                                No. 16AP-451

     Appellee/Cross-Appellee,       :     (BTA No. 2015-309)
                                No. 16AP-452

Board of Education of the Hamilton Local          :     (BTA No. 2015-310)
School District,

                               :     (REGULAR CALENDAR)
     Appellee/Cross-Appellant.

                               :

D E C I S I O N

Rendered on May 11, 2017

**On brief:** *Stephen Swaim*, for appellant. **Argued:** *Stephen Swaim.*

**On brief:** *Rich & Gillis Law Group, LLC, Mark H. Gillis*, and *Kimberly G. Allison*, for cross-appellant. **Argued:** *Kimberly G. Allison.*

APPEALS from the Board of Tax Appeals

SADLER, J.

{¶ 1} Appellant/cross-appellee, BT Property, LLC ("BT Property"), appeals a decision of the Board of Tax Appeals ("BTA") determining the value of four properties for tax years 2012, 2013, and 2014. Appellee Board of Education of the Hamilton Local Schools ("school board") submits a cross-appeal challenging only the BTA's determination

of square footage of the main truck terminal located on one of the subject properties. For the following reasons, we affirm the BTA's decision.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This case concerns the tax valuation of an owner-occupied industrial property comprised of four parcels in the city of Obetz, which is located within Franklin County and the Hamilton Local School District. The parties reference these parcels within the context of three "sites." Site 1 consists of parcel numbers 152-000716 and 152-000717, together forming approximately 28.6 acres. Both parcels on Site 1 are zoned PID (planned industrial district).

{¶ 3} A truck terminal facility sits on Site 1. The truck terminal facility was constructed in 1972 to serve as a United Postal Service ("UPS") sorting facility; UPS continues to use the facility for this purpose. The structure of the truck terminal facility is comprised of one large room with 96 to 129 exterior door openings each raised approximately three feet from the ground, an internal truck repair area, employee common spaces, and office areas located at the perimeter of the building. The facility has a clear ceiling height of approximately 19 to 20 feet, and the non-office areas of the facility are heated but not cooled. The floor of the main room of the facility is roughly at ground level and is the same level as the exterior area where trucks park to unload or load cargo. Functionally, a truck backs up against the wall underneath a door opening, and a raised conveyer system on the interior side of the wall is used to distribute the truck's cargo.

{¶ 4} Additional improvements on Site 1 include a truck wash-tunnel building, an air containerization building, and a guard house. At the northeast corner of Site 1, BT Property expressly granted the city of Columbus a perpetual easement for the purpose of a sewage pumping station. The easement is improved with a brick pumping station and wire fencing. According to the deed of easement, BT Property "retains the right to use the subject real property for all purposes which do not in any way impair the [city's] use or interfere with the * * * 'improvement' or access thereto." (Hatcher Appraisal at 57.)

{¶ 5} Site 2, also zoned PID, equates to parcel number 152-001441, a roughly 10-acre plot used for parking and agriculture. Site 3, an unimproved property of approximately 11 acres, equates to parcel number 152-001442 and is zoned PCD (planned commercial district).

{¶ 6}   In an original assessment for the tax year 2012, the Franklin County Auditor valued the four parcels, in total, at a "true value[]" of $6,645,100.  (BTA Decision at 2.) Broken down by parcel, the auditor valued parcel number 152-000716 at $2,450,900, parcel number 152-000717 at $3,529,100, parcel number 152-001441 at $398,300, and parcel number 152-001442 at $266,800.  BT Property filed a tax year 2012 complaint with the Franklin County Board of Revision ("BOR") requesting a reduction in value for the four parcels.  The school board filed a counter-complaint in support of the auditor's value.  After a hearing, the BOR retained the auditor's value for tax years 2012, 2013, and 2014 for each parcel.

{¶ 7}   BT Property appealed the BOR's decisions on each parcel to the BTA, and the BTA consolidated the appeals.  At the BTA hearing, BT Property submitted the testimony and appraisal report of David Hatcher, and the school board submitted the testimony and appraisal report of Thomas Sprout.

{¶ 8}   Hatcher testified to using a sales comparison approach and an income approach to value Site 1.  Hatcher did not use a cost approach because of the age of the building and resultant difficulties in determining depreciation.  According to Hatcher, the highest and best use of the property, as improved, is "industrial."  (Nov. 16, 2015 Tr. at 39.)  Hatcher characterized the main building, with its doors shut and personal property removed, as basically a warehouse.  Hatcher noted that most warehouses have some sort of truck docks and that if the walls underneath the door openings were removed, trucks could drive into the warehouse.  However, Hatcher also testified that the building "doesn't even meet the good qualifications of a warehouse because the clear height, the ceiling height, is only 19 foot," while modern warehouse and distribution centers have ceiling height "up in that 22, * * * clear up to 42 foot high" range.  (Tr. at 13.)  Hatcher agreed that if the ground level of the warehouse floor was raised to accommodate typical types of docks with fork lift access to truck cargo, the clear height of the building would be further reduced to 15 or 16 feet.  Hatcher differentiated the building from a regular truck facility because of the lack of typical docks and the shape of the main building, which is not as narrow as truck docking facilities.

{¶ 9}   Due to his characterization of the property, Hatcher predominately used warehouse sales comparables to value the property under the sales comparison approach

and used all warehouse distribution facilities to determine value under the income approach. Based on the income approach with support from the sales comparison approach, Hatcher arrived at $2,900,000 as the value for Site 1 for 2012, 2013, and 2014. To arrive at this value, Hatcher used 151,379 as the square footage of the main facility, a number that he testified to obtaining from the owner of the property and that was the auditor's number. He did not confirm with the owner that the auditor's number was correct. Furthermore, Hatcher valued both Sites 2 and 3 at $420,000 for all three years based solely on a sales comparison approach.

{¶ 10} In contrast, according to Sprout, the highest and best use of the property, as improved, is the "present improvements" and found that the main facility on Site 1 constituted a "special use type of property." (Sprout Appraisal at 35; Tr. at 67.) As such, Sprout utilized the cost approach and the sales approach to value the property. Sprout did not use the income approach because truck terminals are typically owner-occupied and because aspects of the facility at issue would not provide an accurate indication of value under the income approach.

{¶ 11} Sprout testified that a truck terminal is a specific asset type defined as a loading dock facility allowing truck freight operators to redistribute loads of their truck fleets at an intermediate transfer point whereas a traditional warehouse is a large building where raw materials or manufactured goods may be stored before their export or distribution for sale. In Sprout's opinion, the facility is a special use type of truck terminal in that it was specifically built for UPS to distribute their packages, including designing a docking system and doors to accommodate their conveyor belt package transport system and a central area bigger than typical truck terminals to accommodate both a large number of delivery people and sorting bins as well as an internal truck repair area. Sprout did not believe that warehouses were sufficiently comparable to the subject property to provide a credible analysis. Sprout added value for the separate car wash building and the air containerization building but not the guard house.

{¶ 12} Under the cost approach analysis, Sprout added the vacant value of the land based on a market analysis of comparable sales to the depreciated value of the improvements present on the site to arrive at a value for Site 1 of $5,020,000 for 2012 and 2013 and $5,600,000 for 2014. Sprout also valued the property under the sales approach.

Due to his characterization of the property, Sprout predominately used truck terminal sales as comparables. Sprout reconciled the valuations under the cost and sales approaches to value Site 1 at $5,050,000 for 2012 and 2013 and $5,600,000 for 2014, and valued Site 2 at $534,600 and Site 3 at $366,800 for all three years.

{¶ 13} Regarding the square footage numbers he utilized in arriving at value, Sprout testified that the property owner provided him with the numbers. He added the 166,961 square footage of the main building to 23,642 square feet for the car wash and 2,450 square feet for the air containerization building. Sprout agreed there was a discrepancy in the car wash number and agreed that reducing the acreage for certain public road easements is appropriate. Sprout disagreed that the acreage on Site 1 should be reduced for the easement granted to the city of Columbus, even considering the building and fencing. Sprout noted that he did not receive anything from the property owner indicating they would not be able to use the property and noted that the easement was likely "helping out the UPS situation." (Tr. at 95.)

{¶ 14} The BTA determined that Sprout's appraisal report constituted competent and probative evidence on which it could rely and found that Sprout's appraisal more accurately reflects the value of the subject property. Based on the appraisal evidence and testimony of both appraisers, the BTA agreed with Sprout's special use property finding and found that a cost approach, supported by the sales approach and his testimony before the board, reflected the true value of the property in this case. Ultimately, the BTA found Sprout's conclusions of value under the cost approach to be reliable indications of value on which the BTA may rely, with two exceptions: the acreage number utilized and the square footage number utilized.

{¶ 15} Regarding acreage, the BTA reduced the acreage to account for right-a-ways, which Hatcher's acreage numbers reflected and to which Sprout agreed were appropriate. However, the BTA refused to further reduce the acreage of Site 1 based on the permanent easement granted to the city of Columbus for the purpose of a sewage pumping station. The BTA noted that Sprout disagreed with such a reduction and, based on the BTA's own review of the record, found that Hatcher failed to provide probative evidence that the easement results in a diminution of value of the property.

{¶ 16} Regarding square footage, the BTA noted discrepancies between Hatcher's and Sprout's cited numbers.  Hatcher assigned 151,379 square feet for the trucking structure, 132 square feet for the truck wash, and omitted the air containerization building.  Sprout assigned 166,961 square feet to the trucking structure, 23,642 square feet to the truck wash, and 2,450 square feet to the air containerization building.  The BTA decision states that both Hatcher and Sprout testified to obtaining the square footage from the property owner, that Hatcher admitted to misstating the square footage of the truck wash, and that Sprout admitted his trucking structure number was identified as an "extraordinary assumption in his report," conceded that his truck wash number was incorrect, and agreed that 3,750 was a more appropriate number.  (BTA Decision at 6.) "Based upon the foregoing, county property record cards, and testimony from both Mr. Hatcher and Mr. Sprout," the BTA found the appropriate square footages to be 151,379 for the primary trucking improvement, 3,750 square feet for the truck wash, and 2,450 square feet for the air containerization building.  (BTA Decision at 6.)  The BTA adjusted the value of Site 1 as a result of altering the square footage used in Sprout's cost approach model.

{¶ 17} The BTA ultimately determined the year 2012 true value for parcel number 152-000716 to be $1,756,300, parcel number 152-000717 to be $2,528,920, parcel number 152-001441 to be $495,400, and parcel number 152-001442 to be $367,850.  For the year 2013, the BTA valued parcel number 152-000716 at $1,731,350, parcel number 152-000717 at $2,493,010, parcel number 152-001441 at $495,400, and parcel number 152-001442 at $367,850.  Regarding the year 2014, the BTA concluded that the BOR exceeded its jurisdiction in issuing a decision determining the value for 2014 when that was still an "open" year subject to challenge by a complaint and ordered the BOR to vacate its decision on 2014.  (BTA Decision at 2.)

{¶ 18} BT Property filed a timely appeal to this court, and the school board filed a timely cross-appeal regarding the BTA's finding of the main truck terminal's footage.

## II.  ASSIGNMENTS OF ERROR

{¶ 19} In its appeal, BT Property presents six assignments of error:

> [1.] The decision of the Board of Tax Appeals is unreasonable, erroneous, unlawful for the reason that the decision is

contrary to the weight of the evidence presented to the Board of Tax Appeals.

[2.] The decision of the Board of Tax Appeals is unreasonable, erroneous, and unlawful and contrary to the law for the reason that the Board of Tax Appeals improperly failed to consider all of the evidence presented.

[3.] The Board of Tax Appeals abused its discretion and acted unreasonably, unlawfully and arbitrarily in determining the value of the subject property by disregarding the Appraisal evidence of the taxpayer/Appellant herein.

[4.] The Board of Tax Appeals abused its discretion and acted unreasonably, unlawfully and arbitrarily in concluding that a typical internally open building structure was a "Special Use Property" because of the personal property equipment utilized by taxpayer's business operations that were contained within it.

[5.] The Board of Tax Appeals abused its discretion and acted unreasonably, unlawfully and arbitrarily by not deducting the value of land that had a permanent easement on it to the City of Columbus for a sewage pumping station, which involved a physical structure above ground on the property which had been built and was owned by the City of Columbus as a sewage pumping station and that the City of Columbus had fenced off with barbed wire fencing pursuant to their easement.

[6.] The Board of Tax Appeals abused its discretion and acted unreasonably, unlawfully, and arbitrarily by ignoring the Board of Revision's Decision for Tax Year 2014 and failing to determine a value for that Tax Year in it's Decision.

{¶ 20} In its cross-appeal, the school board presents one assignment of error:

The Board of Tax Appeals abused its discretion in determining the square footage of the subject's main truck terminal to be 151,379.

## III. STANDARD OF REVIEW

{¶ 21} The Supreme Court of Ohio recently set forth the applicable standard of review in *Bd. of Edn. of the Westerville City Schools v. Franklin Cty Bd. of Revision*, 146 Ohio St.3d 412, 2016-Ohio-1506, as follows:

"In reviewing a decision of the BTA, we do not sit as 'a super BTA or a trier of fact de novo.' " *RNG Properties, Ltd. v. Summit Cty. Bd. of Revision*, 140 Ohio St.3d 455, 2014-Ohio-4036, 19 N.E.3d 906, ¶ 18, quoting *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St. 3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 17.  To be sure, this court "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 2001-Ohio-1335, 754 N.E.2d 789 (2001).  However, the BTA's factual findings are entitled to deference as long as they are supported by "reliable and probative" evidence in the record. *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 152, 1995 Ohio 42, 648 N.E.2d 483 (1995).  We "will not disturb" a valuation determination by the BTA "unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus.

Perhaps most significant in this context is this court's recognition of HN2 the BTA's "wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come before it." *EOP-BP Tower* at ¶ 9.  Indeed, "[a]bsent a showing of an abuse of discretion," such determinations by the BTA "will not be reversed by this court," *id.* at ¶ 14, and a claimed abuse of discretion requires a showing that the BTA's " 'attitude is unreasonable, arbitrary or unconscionable,' " *J.M. Smucker, L.L.C. v. Levin*, 113 Ohio St.3d 337, 2007-Ohio-2073, 865 N.E.2d 866, ¶ 16, quoting *Strongsville Bd. of Edn. v. Zaino*, 92 Ohio St.3d 488, 490, 2001-Ohio-1269, 751 N.E.2d 996 (2001).

"When cases are appealed from a board of revision to the BTA, the burden of proof is on the appellant, whether it be a taxpayer or a board of education, to prove its right to an increase or decrease from the value determined by the board of revision." *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 566, 2001-Ohio-16, 740 N.E.2d 276 (2001).  In order to prevail before the BTA, the appellant "must present competent and probative evidence * * *; it is not entitled to a reduction or an increase in valuation merely because no evidence is presented against its claim." *Id.* If the parties present competing appraisals at the BTA, "[t]he weighing of evidence and the assessment of credibility as regards both of the

> appraisals are the statutory job of the BTA," and that body "is vested with wide discretion" in carrying out that function. *EOP-BP Tower* at ¶ 9.

*Id.* at ¶ 26-28.

## IV.  BT PROPERTY'S APPEAL

### A.  First, Second, Third, and Fourth Assignments of Error

{¶ 22} As indicated by BT Property in its brief, the first four assignments of error are interrelated and ultimately concern one central issue: whether the BTA was correct in its "special use property" conclusion.  (BT Property's Brief at v, 11.)  As such, we will address these assignments of error together.

{¶ 23} As a general rule, land in Ohio should be taxed based on market exchange valuation—the amount for which that property would sell on an open market by a willing seller to a willing buyer—rather than the current use value or the property.  *Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, 146 Ohio St.3d 173, 2016-Ohio-371, ¶ 24-28.  Because a valuation method based on the current or present use of the property "excludes, among other factors, location and speculative value which comprise market value" in violation of Article XII, Section 2 of the Ohio Constitution, ordinarily a present-use method cannot be made the basis for valuation of real property for tax assessment purposes.  *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 32 Ohio St.2d 28, 33 (1972); Section 2, Article XII, Ohio Constitution.

{¶ 24} An exception to this general rule exists under the "special purpose" property doctrine.  *Rite Aid* at ¶ 28-29.  "Under this doctrine, a property's use may form the basis of the property's value if it is ' "special purpose" in nature,' meaning that it was built for a unique purpose, is in good condition, and is being used for that purpose—both presently and for the foreseeable future."  *Johnston Coca-Cola Bottling Co. v. Hamilton Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2017-Ohio-870, ¶ 17 (slip opinion), quoting *Rite Aid* at ¶ 29, citing *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision*, 12 Ohio St.3d 270, 271 (1984) (holding that Article XII, Section 2 of the Ohio Constitution "does not prohibit altogether any consideration of the present use of a property").

{¶ 25} BT Property first argues that the BTA erred by determining the main building was a special use property "because of the personal property equipment utilized

by [BT Property's] business operations that were contained within it."  (Appellant's Brief at v.)  This characterization of the BTA special use property finding is incorrect.  The BTA noted that it is undisputed that the structure has and continues to be operated for the purpose it was built and that "[t]here is no evidence tending to indicate that the subject's use would change."  (BTA Decision at 4.)  Moreover, BTA's finding in this regard is expressly based on the appraisal and testimonial opinion of both appraisers.  Sprout concluded that the facility is a special use type of truck terminal because the physical structure was specifically built for UPS to distribute their packages, including the docking system and doors, a large central area bigger than typical truck terminals, and an internal truck repair area.  Sprout did not form his opinion from the personal property of the business per se but, rather, how the structure itself was built to accommodate special business needs in a way that differentiated this building from other typical truck terminals.  Hatcher agreed that the design of this facility is different than other truck terminals.  Based on the above, we disagree with appellant's contention that the BTA decision was improperly based on the personal property utilized within the business.

{¶ 26} Next, BT Property argues that *Dinner Bell Meats* is distinguishable because both appraisers in *Dinner Bell Meats* agreed that the property was distinct enough to constitute a special use property.  We find nothing in *Dinner Bell Meats* or subsequent law that requires both appraisers to agree on a special use property designation.  *See, e.g.*, *Johnson* at ¶ 17; *Rite Aid* at ¶ 29.  As such, we disagree with appellant's argument and find that appellant has not demonstrated an error occurred on this point.

{¶ 27} Lastly, BT Property argues that the facility fails to qualify as a special use property under various professional appraisal definitions because it would require no extra expense to convert the facility to warehouse use and that the structure instead is consistent with a typical open warehouse.  This argument lacks merit.

{¶ 28} Here, although Hatcher discussed that a business could shut the doors and remove personal property to turn the subject building into a warehouse, he also discussed that most warehouses have some docks and that the docks here did not allow for forklift access.  Hatcher acknowledged that the building does not meet a good qualification of a warehouse due to the low ceiling heights, and Sprout opined that warehouses were not sufficiently comparable to the facility.  Based on this record, the cost to convert the facility

into a warehouse is not evident.  As such, BT Property has not met its burden in proving an error on appeal in this regard.

{¶ 29}  Moreover, to the extent BT Property is asking us to reweigh the evidence to determine that the facility is akin to a warehouse, rather than a special use trucking facility, and to ultimately choose Hatcher's opinion over Sprout's opinion, we decline to do so.  " 'The weighing of evidence and the assessment of credibility as regards both of the appraisals are the statutory job of the BTA.' "  *Lutheran Social Servs. of Cent. Ohio Village Housing, Inc. v. Franklin Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2017-Ohio-900, ¶ 17, quoting *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, ¶ 9.  *Meijer Stores L.P. v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, ¶ 20 ("[D]etermining the probative value of an appraiser's testimony lies within the competence of the BTA.").  We find no legal error that would make BTA's reliance on Sprout's opinion inappropriate as a matter of law in this case and find no other indication that the BTA otherwise abused its discretion in weighing the evidence or assessing the credibility of the witnesses.  As such, we defer to the BTA's adoption of Sprout's opinion.  *Id.*; *Lutheran Social Servs.* at ¶ 18.

{¶ 30}  Doing so does not lead to a slippery slope whereby "EVERY warehouse and industrial building out there a 'special-purpose' building if they are still being used by their original building or tenant."  (Emphasis sic.)  (BT Property's Brief at 18.)  Whether a particular building meets the legal definition of "special purpose" depends on the specific facts of the case at hand and, many times, the credibility of the appraisers' opinions on the subject.  *See, e.g., Meijer Stores* at ¶ 24-28; *Rite Aid* at ¶ 38-42.

{¶ 31}  Considering all the above, we conclude the BTA did not base its decision on an incorrect legal conclusion and do not find that the record here affirmatively shows that the BTA decision is unreasonable or unlawful.  As such, we will not disturb the decision of the BTA on appeal.  *Bd. of Edn. of the Westerville City Schools* at ¶ 26-28.

{¶ 32}  Accordingly, BT Property's first, second, third, and fourth assignments of error are overruled.

### B.  Fifth Assignment of Error

{¶ 33}  Under the fifth assignment of error, BT Property contends that the BTA abused its discretion by not deducting the value of land subject to a permanent easement

to the city of Columbus. Specifically, BT Property argues that the BTA decision erred in ruling that the easement here, which includes a structure, equipment, and fencing on it, did not restrict in any way the taxpayer's use of that property.

{¶ 34} As previously stated, the BTA's factual findings are entitled to deference as long as they are supported by reliable and probative evidence in the record. *Id.* at ¶ 26. At the same time, the burden of proof is on the appellant to prove its right to a decrease from the value determined by the BOR, and the burden of affirmatively demonstrating error on appeal likewise rests with the appellant. *Id.* at ¶ 28; *Watkins v. Holderman*, 10th Dist. No. 11AP-491, 2012-Ohio-1707, ¶ 11; App.R. 9 and 16(A)(7).

{¶ 35} Here, the record contains photographs of the structure and fencing on the easement, as well as the deed of easement which expressly allows BT Property "the right to use the subject real property for all purposes which do not in any way impair the [city's] use or interfere with the * * * 'improvement' or access thereto." (Hatcher Appraisal at 57.) In short, whether BT Property may use this property is unclear on this record.

{¶ 36} Furthermore, the assignment of error addresses only one of the BTA's reasons for denying the reduction: Sprout's contention that he did not receive information that BT Property would not be able to use that property. The BTA based its conclusion on more than the issue of use. The BTA cited Sprout's testimony disagreeing with such a reduction, Hatcher's failure to provide probative evidence that the easement would result in a diminution in value, and BTA case law holding that easements are considered a part of the real property and are not usually themselves valued. Beyond citing the photographic evidence of the structure and fencing, BT Property does not provide an argument or case law as to why the BTA's full analysis is in error. Therefore, considering that BT Property had the burden to prove its right to a decrease from the value determined by the BOR, the BTA did not abuse its discretion on this point, and BT Property has not otherwise demonstrated error on appeal.

{¶ 37} Accordingly, BT Property's fifth assignment of error is overruled.

**C. Sixth Assignment of Error**

{¶ 38} Under the sixth assignment of error, BT Property contends that the BTA abused its discretion by ignoring the BOR's decision for the Tax Year 2014 and failing to determine a value for that tax year in its decision. However, BT Property states in its

appellate brief that because it "has no horse involved in this issue," it will "not be writing anything in this brief about the BTA's Decision to dismiss that part of this case" but notes that the parties need clarification as to whether the dismissal was proper so that they know how to proceed.  (BT Property's Brief at 22.)

{¶ 39} Pursuant to App.R. 16(A)(7), "[t]he appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, *with citations to the authorities, statutes, and parts of the record on which appellant relies.*"  (Emphasis added.)  Here, we find BT Property's brief fails to provide any argument or legal support as provided in App.R. 16(A)(7).  *Abraham v. BP Exploration & Oil, Inc.*, 149 Ohio App.3d 471, 2002-Ohio-4392, ¶ 32 (10th Dist.) ("It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error."); *Watkins* at ¶ 11; App.R. 9 and 16(A)(7).

{¶ 40} Accordingly, BT Property's sixth assignment of error is overruled.

## V.  SCHOOL BOARD'S CROSS-APPEAL

### A.  Assignment of Error

{¶ 41} Under its sole assignment of error, the school board asserts that the BTA abused its discretion in determining the square footage of the truck terminal to be 151,379.  The school board specifically asserts that the BTA incorrectly stated the property owner as the source of Hatcher's square footage figure when he later testified that he relied on the county auditor's square footage figure and asserts that the square footage given by the property owner to Sprout is "clearly a more reliable indicator of square footage of the truck terminal that the square footages contained in the County records and unconfirmed by the property owner." (School Board's Brief at 20-21.)

{¶ 42} Here, Sprout testified that the truck terminal was 166,691 square feet, a number that Sprout testified to obtaining from the property owner.  Hatcher utilized 151,379 as the square footage of the truck terminal and testified as follows regarding his source:

> Q. * * * How did you arrive at the square footage for the subject property?

A. I was given a list by the property owners.  It was like an inventory of all the equipment and everything that was in the building.

Q.  What about the square footage of the building?

* * *

Q.  * * * How did you arrive at your square footage?

A.  What the owners told me.

Q.  So you went with the Auditor's value?

A.  Yes.

* * *

Q. Did you ask the property owner if the Auditor's values were correct?

A. Well, they're the ones that built it and that was on their specs.  It's a very, very hard building to measure because there are portable truck docks that they can move in and out and it was impossible to properly measure it.

Q. But did you ask the property owner if the Auditor's numbers were correct?

A. No, I didn't.

(Tr. at 36-37.)

{¶ 43} In our view, Hatcher testified that the property owner was the source of his square footage number of the truck terminal, which was the same number used by the auditor.  Thus, contrary to the school board's position, the BTA's decision does not erroneously state the source of Hatcher's information.

{¶ 44} Furthermore, the BTA did not base its finding solely on Hatcher's testimony but also relied on the county property record cards.  Faced with conflicting figures for the truck terminal allegedly collected from the same source, we find the BTA did not abuse its discretion in determining 151,379 to be the square footage of the truck terminal.  *Dinner Bell Meats* at 272, quoting *Citizens Fin. Corp. v. Porterfield*, 25 Ohio St.2d 53, 57 (1971)

("It is well-settled that 'it is not the function of this court to substitute its judgment on factual issues for that of the Board of Tax Appeals.  We are limited to a determination from the record whether the decision reached by the board is unreasonable or unlawful.' ").  Therefore, for all the above reasons, the school board's argument lacks merit.

{¶ 45}  Accordingly, the school board's sole assignment of error is overruled.

## VI.  CONCLUSION

{¶ 46}  Having overruled BT Property's six assignments of error and overruled the school board's sole assignment of error, we affirm the judgment of the BTA.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____