[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *W. Carrollton City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-4328.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-4328

WEST CARROLLTON CITY SCHOOLS BOARD OF EDUCATION, APPELLANT, *v.*
MONTGOMERY COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *W. Carrollton City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-4328.]

*Taxation—Real property—Valuation—Board of Tax Appeals did not act unreasonably or unlawfully in retaining auditor's valuation and acquired no duty to perform independent valuation—Neither 2008 land-sale price nor property owner's actual construction costs affirmatively negate auditor's 2011 valuation of land with improvements—Board of Tax Appeals' decision affirmed.*

(No. 2015-0389—Submitted April 4, 2017—Decided June 20, 2017.)

APPEAL from the Board of Tax Appeals, No. 2012-4862.

_____

**Per Curiam.**

{¶ 1} Appellant, West Carrollton City Schools Board of Education ("BOE"), challenges the decision of the Board of Tax Appeals ("BTA"), which retained the auditor's update-year valuation of $4,716,690 for 2011. The BOE argues that the subject property, two contiguous parcels developed by appellee Carmax Auto Superstores, Inc., should be valued by reference to the 2008 purchase of the land for $5,850,000 along with actual construction costs of $7,015,740 for subsequent improvements. Appellee Montgomery County Board of Revision ("BOR") and the BTA both disagreed and retained the auditor's value.

{¶ 2} On appeal to this court, the BOE argues that the BTA acted unreasonably and unlawfully by refusing either to rely on the land-sale price and actual-cost evidence to value the property or to perform an independent valuation of the property. We disagree, and we therefore affirm the decision of the BTA.

## FACTUAL BACKGROUND

{¶ 3} On January 9, 2008, the two parcels at issue—vacant land at that time, amounting to about 15 acres—were purchased by Carmax for $5,850,000. The BOE filed a complaint seeking an increase in the value for tax year 2008 of the land from the $578,100 valuation determined by the auditor to its sale price. The BOR ordered an increase but not to the full amount of the sale price, and the BOE appealed to the BTA, which found that the sale was a recent arm's-length transaction. BTA No. 2009-K-3910, 2012 WL 4338747, *7 (Sept. 11, 2012). On that basis, the BTA granted the requested increase to $5,850,000. *Id.* at *8.

{¶ 4} During 2008 and 2009, Carmax constructed on the subject property a used-car sales center comprising about 45,435 square feet of interior space. Construction records indicate actual costs, and Carmax spent a total of $7,015,740.76 to construct the building and other improvements.

{¶ 5} 2011 was a triennial update year in Montgomery County, and the auditor set the value of the subject property at $4,716,690—the components of the

valuation being $52,460 for the smaller, undeveloped parcel and $4,664,230 for the main parcel (a land value of $2,476,800 plus improvements valued at a "replacement cost new" amounting to $2,187,430).

{¶ 6} The BOE filed a complaint seeking an increase to the 2008 land-sale price of $5,850,000. At the BOR hearing, the BOE relied on evidence of the sale and Carmax presented sworn testimony from its counsel. The BOR retained the auditor's valuation, and the BOE appealed to the BTA, where the BOE presented cost evidence along with Carmax's stipulation that it spent $7,015,740.76 to construct the building and other improvements. Carmax presented the testimony of an appraiser, Michael N. Moorhead, who had appraised the unimproved property as of January 1, 2008. That appraisal had been admitted in the prior case but was not introduced here.

{¶ 7} As for the tax-year-2011 valuation, Moorhead did not perform a complete new appraisal but reviewed additional market data at Carmax's request. One comparable land sale for $1,800,000 for approximately 14 acres occurred in January 2014. As for the value of the improvements, Moorhead testified that a cost approach would be appropriate only in conjunction with using the market-sales and income approaches. Moorhead also opined that the facility was a special-purpose building. Lastly, Moorhead pointed out that additional costs do not necessarily add to the market value of a property.

{¶ 8} In its decision, the BTA made no mention of Carmax's construction costs as a basis for determining a value for the improvements. The BTA rejected using the sale price to value the land because the sale occurred more than 24 months before the January 1, 2011 update valuation, relying on the authority of *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 139 Ohio St.3d 92, 2014-Ohio-1588, 9 N.E.3d 1004. BTA No. 2012-4862, 2015 WL 750651, *2 (Feb. 5, 2015). Finding an absence of competent and probative evidence of value, the BTA retained the auditor's original value. *Id.*

## ANALYSIS

### R.C. 5713.03 Bars the Direct Use of the Land-Sale Price Because of the Subsequently Added Improvements

{¶ 9} R.C. 5713.03 addresses the use of a sale price to value real property and creates exceptions to the general rule in favor of using a recent, arm's-length sale price to determine value. Relevant here is the exception providing that a sale price "shall not be considered the true value of the property sold if subsequent to the sale * * * [a]n improvement is added to the property." R.C. 5713.03(B).

{¶ 10} Between Carmax's 2008 acquisition of the property and the January 1, 2011 lien date, Carmax spent more than $7 million constructing the used-car facility on the formerly vacant land. Under the statute's plain terms, the 2008 land-sale price "shall not be considered" the property's value as of 2011. R.C. 5713.03(B).

{¶ 11} Moreover, the improvement exception is itself a factor that relates to the recency of the sale. This court has stated that the recency rule of R.C. 5713.03 "encompasses all factors that would, by changing with the passage of time, affect the value of the property." *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 35. Adding an improvement is a factor intrinsic to the property itself that affects its value.

{¶ 12} Instead of relying on the improvement exception of R.C. 5713.03, however, the BTA invoked a more general proposition set forth in *Akron City School Dist. Bd. of Edn.*, 139 Ohio St.3d 92, 2014-Ohio-1588, 9 N.E.3d 1004, at ¶ 26: "a sale that occurred more than 24 months before the lien date and that is reflected in the property record maintained by the county auditor or fiscal officer should not be presumed to be recent when a different value has been determined for that lien date as part of the six-year reappraisal." Because the improvement exception more specifically bars direct use of the sale price to value the property, we need not determine whether the holding of *Akron* applies here.

**Neither the 2008 Land-Sale Price nor the Actual Construction Costs**

**"Affirmatively Negate" the Auditor's Valuation**

**{¶ 13}** The BOE argues that evidence in the record "affirmatively negates" the auditor's valuation as of 2011 and that the BTA therefore should have performed an independent valuation of the property. *See Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 24-25. The BOE is mistaken.

**{¶ 14}** First, the 2008 sale price of $5,850,000 for the land does not "affirmatively negate" the auditor's 2011 valuation of the land and improvements in the aggregate at $4,716,690. For one thing, the land-sale price is not recent, for the reasons discussed already. Second, the appraiser testified at the BTA hearing that he had developed the opinion that the vacant land was worth $2,600,000 as of 2008. Also, a comparable property indicated a value of $1,800,000. Under the circumstances, the 2008 sale price cannot be taken at face value as a refutation of the auditor's valuation.

**{¶ 15}** Second, the actual construction costs that Carmax incurred do not negate the auditor's valuation. Although Carmax stipulated to having incurred over $7 million in construction costs for its facility, those historical costs do not necessarily establish what the property would have sold for in 2011. The cost approach involves estimating "what a potential buyer would expect to pay in constructing a replacement for the existing building," a significant number because the " 'prospective purchaser will not rationally pay $15,000 for a house, or for 100 shares of stock, or for a shipment of wheat if, without serious delay, he can build or buy equally satisfactory substitutes for $10,000.' " *Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 12, quoting 1 Bonbright, *The Valuation of Property* 157 (1937). A buyer might not look to his seller's actual costs because the seller may have overspent, and the buyer could therefore conclude that a property of equal

utility would cost less. That is why cost valuation relies on the auditor's consulting cost schedules to generate a replacement cost new for the improvements at issue. *See* Ohio Adm.Code 5703-25-12(A) and (B).

{¶ 16} The BOE's attempted reliance on *Dayton-Montgomery Cty. Port Auth.* does not advance its cause. In that case, we did not favor actual costs over costs derived from the auditor's schedules. Instead, we held that the close correspondence between actual costs and cost-schedule projections negated the auditor's use of an upward "grade-factor adjustment."[1] The present case does not involve a grade-factor adjustment, and for that reason *Dayton-Montgomery Cty. Port Auth.* is simply inapposite.

{¶ 17} Equally unavailing is the BOE's suggestion that an actual-cost valuation is proper because the property is a special-purpose property to the extent that it is specially adapted to Carmax's needs as a retailer. The special-purpose doctrine is applicable when the special adaptation to the owner's currently successful use has been shown to be detrimental to the property's marketability— *i.e.*, the property suffers built-in economic or functional obsolescence or is constructed with superadequacies[2] that make it unattractive in the general market for that type of property. *See Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, 146 Ohio St.3d 173, 2016-Ohio-371, 54 N.E.3d 1177, ¶ 29 (recognizing that the " ' "special purpose exception is applied to a building in good condition being used currently and for the foreseeable future for the unique purpose for which it was built" ' "), quoting *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision*, 12 Ohio St.3d 270, 272, 466 N.E.2d 909 (1984), quoting *Fed. Reserve Bank of*

---

[1] A grade-factor adjustment is sometimes performed when the county's appraiser concludes that the quality of improvements being appraised is superior or inferior to the model used by the county's cost schedules; a factor is developed and applied to increase or decrease the replacement cost new of the property. *Hawk v. Washington Cty. Bd. of Revision*, BTA No. 94-B-644, 1995 WL 50724, *3 (Feb. 3, 1995).

[2] "Superadequacy" refers to an "excess in the capacity or quality of a structure" in relation to "market standards." Appraisal Institute, *The Dictionary of Real Estate Appraisal* 226 (6th Ed.2015).

*Minneapolis v. State*, 313 N.W.2d 619, 623 (Minn.1981); *see Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, ¶ 24 ("we have also held that the constitutional prohibition [of legislation requiring consideration of current use to the exclusion of market value in the valuation of property] does not bar consideration of current-use value in the context of the 'special-purpose property' doctrine"), citing *Dinner Bell Meats* at 271.

{¶ 18} There is no finding of "special purpose" by the BTA here, but even if there were, that would not necessarily justify reliance on *actual* costs as opposed to the county's cost schedules. Although the decisions cited in the BOE's brief demonstrate that the BTA in some instances has preferred actual costs to the use of cost schedules, we are not aware of any binding legal principle that requires actual costs to be preferred when performing a cost valuation of the property. Indeed, there is a clear danger in relying on actual costs to the exclusion of cost schedules: the owner and potential seller of the property may be understood to have spent too much on the improvements, and a buyer may calculate that it could obtain an " 'equally satisfactory substitute' " for the property by paying significantly less, *Dayton-Montgomery Cty. Port Auth.*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, at ¶ 12, quoting Bonbright at 157. Moreover, the one special-purpose decision cited by the BOE that endorses the cost approach is *Dinner Bell Meats*, and the record in that case was clear that the appraiser whose cost valuation was adopted performed his cost approach using cost schedules from the Marshall Valuation Service.

{¶ 19} Because the auditor's value was not negated by the evidence in the record, the BTA acquired no duty to perform an independent valuation and the BTA therefore did not act unreasonably or unlawfully in retaining the auditor's value.

## CONCLUSION

{¶ 20} For the foregoing reasons, we reject the BOE's contentions on appeal and affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, and FISCHER, JJ., concur.

DEWINE, J., concurs in judgment only.

————————————

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, and Karol C. Fox, for appellant.

John R. Koverman Jr., for appellee Carmax Auto Superstores, Inc.

————————————