[Cite as *South-Western City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2018-Ohio-4622.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| South-Western City Schools<br>Board of Education, | : | |
| | : | |
| Appellant-Appellee, | : | |
| | : | |
| v. | : | No. 17AP-691 |
| Franklin County Board of Revision et al., | | (BTA No. 2016-428) |
| | : | |
| Appellees-Appellees, | : | (REGULAR CALENDAR) |
| | : | |
| (Archland Property I, LLC, | : | |
| | : | |
| Appellee-Appellant). | : | |
| | : | |

D E C I S I O N

Rendered on November 15, 2018

**On brief:** *Rich & Gillis Law Group, LLC, Mark H. Gillis*, and *Karol C. Fox*, for appellee South-Western City Schools Board of Education. **Argued:** *Karol C. Fox.*

**On brief:** *Bluestone Law Group, LLC, Charles L. Bluestone*, and *Patrick J. Heery*, for appellant Archland Property I, LLC. **Argued:** *Charles L. Bluestone.*

APPEAL from the Ohio Board of Tax Appeals

SADLER, J.

{¶ 1} Appellant, Archland Property I, LLC, appeals a decision of the Ohio Board of Tax Appeals ("BTA") in favor of appellees South-Western City Schools Board of Education ("BOE"), Ohio Tax Commission, and the Franklin County Board of Revision ("BOR"). For the reasons that follow, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   The subject property is a 0.919-acre parcel improved with a 3,902 square foot McDonald's restaurant constructed in 2002.  The Franklin County Auditor valued the property at $1,000,000 for the 2014 tax year.  Appellant, the owner of the property, filed a complaint against valuation with the BOR seeking to lower the subject property value to $780,000.  The BOE filed a counter-complaint to retain the auditor's value.  At the BOR hearing,[1] appellant amended its complaint to seek a valuation of $630,000 to conform to the value reached by its appraiser and expert witness, Steven J. Weis, MAI.  The BOE cross-examined Weis but did not present new evidence.  The BOR issued a decision adopting Weis's appraisal value for the 2014 and 2015 tax years.  The BOE appealed to the BTA, and a hearing was held to address the subject project in the instant case as well as two other Franklin County McDonald's properties.[2]

### A.  Evidence Presented At the BTA Hearing – Competing Appraisals

{¶ 3}   At the BTA hearing, appellant introduced the testimony and certified appraisal of Weis.  According to Weis's appraisal, the subject property is well maintained and designed to function as a modern, single tenant retail property.  Its highest and best use is a "[r]estaurant" since site improvements contribute value over the value of the land, and an alternative use would not be cost effective as a conversion of the property would require substantial capital.  (Weis Appraisal Report at 26; Tr. Vol. I at 118.)

{¶ 4}   To arrive at a final opinion of value, Weis utilized a sales comparison approach and an income capitalization approach and then reconciled the two approaches.  For his sales comparison approach, Weis utilized six comparable properties, including a Burger King, Skyline Chili, Subway, a former Taco Bell, a former Lone Star Steakhouse, and a former Bob Evans.  Each comparable property is located within the Columbus region.  Weis made adjustments to the comparable properties to account for size, location, and other physical and functional characteristics.  Under the sales comparison approach, Weis arrived at a rounded value of $640,000 for the subject property.

---

[1] As noted in the BTA decision, because of a technical problem, the BOR failed to provide a recording of the BOR hearing.

[2] Appellant also appealed the BTA decisions involving the two other Franklin County McDonald's properties and submitted identical assignments of error and supporting arguments for each case.  This court sua sponte coordinated the three appeals (Nos. 17AP-691, 17AP-692, and 17AP-693) for purposes of oral argument.  Separate opinions are issued with respect to each property.

{¶ 5}    For his income approach, Weis utilized lease rates from nine comparable properties, including one Jimmy Johns, four restaurants (Peacock Restaurant, El Napolito, York Steak House, Kulan Restaurant), and four non-restaurants including a tax accounting business, a vapor business, a tanning salon, and a general store chain.  All the comparable properties are located in Columbus either along Georgesville Road, Holt Road, which is just off Georgesville Road, or Broad Street.  From the comparable properties, Weis determined that rent for the subject property would be $15.50 per square foot, and the net operating income would be $50,714.  Weis determined an overall capitalization rate of 8.50 percent derived from secondary data sources and a direct comparison method using an assortment of fast food chains, free-standing retail (non-restaurant), retail, and office sites.  Under the income approach, Weis arrived at a rounded value of $620,000 for the subject property. Finally, Weis reconciled the two approaches, giving "moderate to significant weight" to both approaches to arrive at a final opinion of value of $630,000.[3]  (Weis Appraisal Report at 49.)

{¶ 6}    The BOE introduced the certified appraisal of Thomas D. Sprout, MAI, CPA, and Brian W. Barnes, MAI, and the testimony of Sprout.  Sprout was qualified as an expert prior to his testimony.  The stated purpose of the Sprout appraisal is to provide an opinion of the "market value of the unencumbered fee simple interest in the subject property." (Sprout Appraisal Report at 11.)  Sprout defines market value as "[t]he most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale."  (Sprout Appraisal Report at 9.)

{¶ 7}    According to the Sprout appraisal, the subject property operates as a McDonald's restaurant, and its highest and best use as improved is a "national fast food restaurant."[4]  (Sprout Appraisal Report at 19; Tr. Vol. II at 316.)  While Sprout believes the definition of "special-purpose property" fits the subject property, he did not base his opinion of value on this designation and did not use the cost approach valuation method

---

[3] Weis testified that "mathematically [the weight] was equal" but that he "would probably put more weight on the sales comparison approach."  (Tr. Vol. I at 125.)

[4] Sprout's appraisal states the property's highest and best use " 'as vacant' would be a national single tenant user consistent with zoning provisions of the City of Columbus," and the "highest and best use of the site 'as improved' would be the existing improvements occupied by a national restaurant as they contribute beyond the value of the site 'as if vacant.' "  (Sprout Appraisal Report at 20; *see also* Tr. Vol. II at 319.)

typically associated with "special use properties."  (Sprout Appraisal Report at 7; Tr. Vol. II at 318.)

{¶ 8}  Like Weis, Sprout arrived at his opinion of value using a sales comparison approach and an income capitalization approach and reconciling the two approaches.  For the sales comparison approach, Sprout identified eight buildings he deemed functionally similar to the subject property and then made adjustments to the sales of these properties for size, location, and physical condition.  The comparable properties operated as Skyline Chili, Chipotle, Taco Bell, Arby's, Graeter's, and a Tom+Chee/Visionworks.  Half of the comparable properties were located within the Columbus region, with the other properties located in Monroe, Springfield, Dayton, and Mansfield.  Sprout made adjustments to the comparable properties to account for differences in market conditions, land ratio, building size, location, condition/quality, presence of a "drive-thru," and leased-fee rates.  (Sprout Appraisal Report at 32.)  Under the sales comparison approach, Sprout arrived at a value between $1,365,000 and $1,465,000 for the subject property.

{¶ 9}  For the income capitalization approach, Sprout compared the subject property primarily to other fast food restaurants to determine market rent of $29 per square foot.  Specifically, the comparable properties Sprout used in his income approach included nine restaurants (two Steak 'n Shakes, Wendy's, two Arby's, two Chipotles, Skyline Chili, Burger King) and one non-restaurant general retail site (a former Hollywood Video).  Six of the comparable properties are located in the Columbus region while the other four properties are located in Monroe, Springfield, Dayton, and Mansfield.  Sprout used the market rent for each property in developing a stabilized profit and loss statement for capitalization purposes.  Sprout then determined an overall capitalization rate of 7.25 percent after conducting a "band of investment analysis," considering the capitalization rates from 12 "sales of fast food restaurants/smaller retail buildings throughout southwest, north central, and Central Ohio," and consulting the national publication, "PwC Real Estate Survey."  (Sprout Appraisal Report at 49, 50.)  Under the income approach, Sprout arrived at a value of $1,380,000 for the subject property.  Finally, Sprout reconciled the two approaches, indicating the income approach provides the "primary indication of value," for a final opinion of value of $1,380,000.  (Sprout Appraisal Report at 11, 52.)

{¶ 10} Regarding Weis's appraisal, Sprout testified that he disagreed with the dataset, particularly the selection of comparable properties, Weis utilized as compared to the highest and best use of this particular property. To Sprout, location was one of a number of factors to consider in selecting comparable properties. (Tr. Vol. I at 187; Tr. Vol. II at 336.)

## B. BTA Decision

{¶ 11} The BTA considered the parties' arguments and appraisal evidence. The BTA noted that Weis and Sprout differed on how broadly or narrowly to define the property's highest and best use, which led to the divergence in their selection of comparable properties under the sales comparison and income approaches to value, and their reliance on each approach to derive final conclusions of value.

{¶ 12} Ultimately, the BTA found Sprout's analysis of value on the tax lien date to constitute the most credible, competent, and probative evidence of value. First, the BTA found Sprout's conclusion as to highest and best use most appropriate. The BTA noted that the Supreme Court of Ohio in *Johnston Coca-Cola Bottling Co., Inc. v. Hamilton Cty. Bd. of Revision*, 149 Ohio St.3d 155, 2017-Ohio-870, held that the BTA may accept an appraisal report that considers the present use of property as long as the appraisal's highest and best use analysis is consistent with the property's present use and does not exclude other factors relevant to the exchange value. According to the BTA:

> Sprout considered the unique physical nature of the subject property in his highest and best use analysis, in which he determined that the physical components of the building make it most suitable for continued use consistent with its original purpose as a national fast-food restaurant. While this may not be as broad as "restaurant," as Weis concluded, it is not so narrow as to limit it to one user, as in the case of a specific meatpacking company or a particular big box store. * * * Also in *Johnston Coca-Cola*, the court noted that this board properly relied upon the present use of the property at issue to determine "which comparables identified by the appraisers were 'more analogous' under the sales-comparison approach." *Id.* at ¶ 16.

(BTA Decision and Order at 3.) Pursuant to *Johnston Coca-Cola* at ¶ 17, the BTA found no error in Sprout's conclusion that the subject property fit the definition of a "special-purpose

property" given that Sprout testified he did not appraise the property as if it were a special-purpose property. (BTA Decision and Order at 4.)

{¶ 13} Corresponding with its decision regarding highest and best use, the BTA found Sprout's selection of comparable properties to best represent the market in which the subject property would operate, and Weis's selection of comparable properties, which were "dissimilar" from the subject property—"sit-down" restaurants, one non-restaurant property, vacant properties—undervalued the subject property. (BTA Decision and Order at 4.)

{¶ 14} Regarding capitalization rates utilized by the appraisers, the BTA expressed concern that Weis's capitalization rate was derived from properties that were dissimilar to the subject property. The BTA found Sprout's capitalization rate, which was based on fast food restaurants, reflective of the subject property's most likely use. Furthermore, the BTA found appellant's arguments regarding Sprout's qualifications and Sprout's use of qualitative adjustments instead of quantitative adjustments to lack merit.

{¶ 15} Considering all the above, the BTA found the BOE satisfied its evidentiary burden on appeal and its evidence to be the most credible, competent, and probative indication of the subject property's value. Therefore, the BTA ordered the value of the subject property for tax years 2014 and 2015 to be increased to $1,380,000.

{¶ 16} Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 17} Appellant assigns the following as trial court error:

> [1.] The Board of Tax Appeals acted unreasonably and unlawfully, and abused its discretion, when it failed to find that Appellant's appraisal evidence constituted competent and probative evidence of the market value of the subject property.

> [2.] The Board of Tax Appeals acted unreasonably and unlawfully, and abused its discretion, when it failed to find that Appellant met its burden of proof, when the record contained reliable and probative evidence to support Appellant's market value of the subject property.

[4.][5] The Board of Tax Appeals acted unreasonably and unlawfully, and abused its discretion, by finding the BOE's highest and best use analysis more appropriate than the analysis proffered by McDonald's.

[5.] The Board of Tax Appeals acted unreasonably and unlawfully, and abused its discretion, in considering the present use of the subject property in determining its market value.

[6.] The Board of Tax Appeals acted unreasonably and unlawfully, and abused its discretion, in finding the capitalization rate advanced by the BOE, rather than the rate adopted by McDonald's appraiser, was more appropriate to use in calculating the Subject Property's market value under the income capitalization approach to value.

[7.] The Board of Tax Appeals acted unreasonably and unlawfully, and abused its discretion, in continuing to recognize Appellee South-Western City School Board of Education's appraiser as an expert witness in view of the testimony and evidence proffered at the BTA hearing.

## III.  STANDARD OF REVIEW

{¶ 18} Pursuant to R.C. 5717.04, an appellate court reviews a BTA decision to determine whether it is "reasonable and lawful." R.C. 5717.04; *NWD 300 Spring, L.L.C. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 193, 2017-Ohio-7579, ¶ 13.  "[I]f it is both, we must affirm." *Id.*

{¶ 19} Appellate review of BTA decisions "is guided by the premise that '[t]he fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities.' " (Other citation omitted.) *Id.*, quoting *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, ¶ 17.  The BTA's factual findings are entitled to deference as long as they are supported by reliable and probative evidence in the record.  *Bd. of Edn. of the Westerville City Schools v. Franklin Cty Bd. of Revision*, 146 Ohio St.3d 412, 2016-Ohio-1506, ¶ 26.

{¶ 20} Furthermore, "[t]he standard for reviewing the BTA's determination of the credibility of witnesses and the weight to be given their testimony is abuse of discretion."

---

[5] Appellant's brief does not include a third assignment of error.  We have retained the numbering in appellant's brief for sake of clarity.

*NWD 300 Spring* at ¶ 14.  Thus, where the parties present competing appraisals, the BTA is vested with wide discretion in determining credibility of the witnesses and weighing the evidence before it.  *Bd. of Edn. of the Westerville City Schools* at ¶ 21; *NWD 300 Spring* at ¶ 13.  The BTA's decision finding one appraisal more probative than another appraisal and adopting a land value in one appraisal over the land value in another appraisal is reviewed for an abuse of discretion.  *Id.* at ¶ 16.  " 'Abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude.' "  *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 153 Ohio St.3d 241, 2017-Ohio-8385, ¶ 7, quoting *Renacci v. Testa, Tax Commr.*, 148 Ohio St.3d 470, 2016-Ohio-3394, ¶ 32.

{¶ 21}  Although the BTA is responsible for determining factual issues, this court will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.  *Bd. of Edn. of the Westerville City Schools* at ¶ 21.  Questions of law are reviewed de novo.  *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, ¶ 7; *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 12, 2017-Ohio-2734, ¶ 13 (identifying the BTA's determination that expert did not appraise the subject property in compliance with the legal standards set forth in earlier cases as a legal issue reviewed de novo).

## IV.  LEGAL ANALYSIS

### A. Recognition of Appraiser As An Expert (Seventh Assignment of Error)

{¶ 22}  For clarity of discussion, we will address appellant's assignments of error out of order.  Under the seventh assignment of error, appellant contends the BTA acted unreasonably and unlawfully and abused its discretion in continuing to recognize Sprout as an expert witness in view of the testimony and evidence offered at the BTA hearing.  We disagree.

{¶ 23}  Appellant specifically argues the "BTA was unreasonable in dismissing [its] lawful impeachment attempts of [Sprout] during cross-examination and in its post-hearing briefs. * * * The BTA consolidated [appellant's concerns regarding Sprout's experience] and categorized them as being without merit because * * * Sprout had been recognized as an expert at the start of his testimony." (Appellant's Brief at 30-31.)  In other words, according to appellant, the BTA "is basically saying that, because * * * Sprout was recognized as an

expert, [appellant] is not able to attempt to impeach his credibility." (Appellant's Brief at 31.)

{¶ 24} Appellant does not point to the record where the alleged improper actions by the BTA occurred. "The burden of affirmatively demonstrating error on appeal rests with the [appellant]." *Miller v. Johnson & Angelo*, 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2; *see also* App.R. 9 and 16(A)(7). Pursuant to App.R. 16(A)(7), "[t]he appellant shall include in its brief, under the headings and in the order indicated, all the following: * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, *with citations to the authorities, statutes, and parts of the record on which appellant relies.*" (Emphasis added.) "It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error." *Abraham v. BP Exploration & Oil, Inc.*, 10th Dist. No. 01AP-1061, 2002-Ohio-4392, ¶ 32.

{¶ 25} Furthermore, the BTA's qualification of an appraiser as an expert who may render an opinion before the board is not equivalent to the BTA barring that expert from cross-examination as to his credibility. *Kettering City Schools Bd. of Edn. v. McDonald's United States, LLC*, 2d Dist. No. 27684, 2018-Ohio-2323, ¶ 108-16 ("*Kettering BOE I*"). Once qualified as an expert, " 'the probative value of an appraiser's testimony lies within the competence of the BTA.' " *BT Property LLC v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 16AP-449, 2017-Ohio-2769, ¶ 29, quoting *Meijer Stores L.P. v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, ¶ 20. Nothing in the BTA's initial statement qualifying Sprout as an expert prohibited appellant from challenging Sprout's credibility, and our review of the record shows appellant had ample opportunity to cross-examine Sprout and impeach his credibility. To the extent appellant suggests the BTA should have retracted its initial finding that Sprout is an expert based on its challenges to Sprout's experience, the record does not support this argument. As such, appellant's contentions are against the record.

{¶ 26} Considering all the above, appellant has not demonstrated that the BTA acted unreasonably and unlawfully and abused its discretion in regard to Sprout as an expert witness. As a result, appellant has not met its burden of affirmatively demonstrating error on appeal in this regard.

{¶ 27} Accordingly, we overrule appellant's seventh assignment of error.

**B. Capitalization Rate (Sixth Assignment of Error)**

{¶ 28} Under its sixth assignment of error, appellant contends the BTA acted unreasonably and unlawfully and abused its discretion in finding the capitalization rate advanced by the BOE, rather than the rate adopted by McDonald's appraiser, was more appropriate to use in calculating the subject property's market value under the income capitalization approach to value.

{¶ 29} Appellant cites to the following excerpt of the BTA's decision: "Weis's capitalization rate raises concerns given that it was derived from properties that were dissimilar from the subject property, i.e., general retail, instead of restaurant or fast-food restaurant properties. As such, we cannot confirm that his capitalization rate appropriately captures the market in which the subject property would operate." (BTA Decision and Order at 4.) Appellant argues this analysis is "not only unreasonable and unlawful, but lazy and factually inaccurate" because out of the 21 properties Weis used to produce an average capitalization rate, 9 were restaurants, and Weis also considered cap rates reported in several realtyrates.com surveys and performed a "band of investment analysis." (Appellant's Brief at 26, 27.) Appellant faults Sprout's analysis for relying on 7 "leased-fee sales" and his band of investment research as coming from "discussions with (unidentified) local banks" which is unverifiable "hearsay" in contrast to Weis's tangible chart. (Appellant's Brief at 28, 29, 30.) According to appellant, compared to Sprout's analysis, Weis provided an "unbiased and much more thorough" capitalization rate and yet the BTA persisted in giving Sprout the benefit of the doubt over Weis and did not adequately explain its reasoning. (Appellant's Brief at 29.)

{¶ 30} First, we disagree with appellant's claim regarding the BTA decision being factually inaccurate. The BTA did not state that Weis used only non-restaurants. Rather, the BTA expressed concern that Weis's capitalization rate was derived from non-restaurants, which is true: non-restaurants did form a significant part of Weis's direct comparison approach to formulating a capitalization rate. Therefore, this argument is without merit.

{¶ 31} Second, appellant provides this court with no legal authority as to how capitalization rates are utilized in tax appeal cases. As such, appellant has not

demonstrated that the BTA acted unlawfully in finding the capitalization rate advanced by Sprout to be more appropriate to use in calculating the subject property's market value under the income capitalization approach to value. *Miller*; App.R. 9 and 16(A)(7).

{¶ 32} Third, the record contains reliable and probative evidence to support the BTA's decision, and the BTA did not act arbitrarily, irrationally, or unconscionably in finding Sprout's analysis more appropriate. Each appraiser agreed that at least some type of restaurant comprised the highest and best use of the subject property. Twelve out of twenty-one properties that Weis utilized to establish his capitalization rate were not restaurants, while nearly all the properties utilized by Sprout to establish his capitalization rate were fast food restaurants. Both appraisers consulted outside sources in their analysis: Weis referenced an internet source data, while Sprout referenced a national publication and local banks. Sprout testified as to the comparable strength of his approach in relation to Weis's approach. On this record, we find the BTA did not act unreasonably and did not abuse its discretion in regard to choosing Sprout's capitalization rate over Weis's capitalization rate.

{¶ 33} Accordingly, we overrule appellant's sixth assignment of error.

## C. Consideration of Present Use (Fifth Assignment of Error)

{¶ 34} Under its fifth assignment of error, appellant contends the BTA acted unreasonably and unlawfully and abused its discretion in considering the present use of the subject property in determining market value by applying the holding of *Johnston Coca-Cola* to this case.

{¶ 35} The Supreme Court in *Johnston Coca-Cola* discussed present use as a means of measuring value. The *Johnston Coca-Cola* court specified:

> Article XII, Section 2 of the Ohio Constitution provides that "[l]and and improvements thereon shall be taxed by uniform rule according to value." This provision generally requires a real-property valuation to ascertain "the *exchange* value" of the property. (Emphasis sic.) *Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, 146 Ohio St. 3d 173, 2016-Ohio-371, 54 N.E.3d 1177, ¶ 24. Exchange value "is the amount for which [a] property would sell on the open market by a willing seller to a willing buyer * * *, *i.e.*, the sales price." *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964). This stands in contrast to valuing property according to its present use. *See Rite Aid*

at ¶ 24. Present-use valuation violates Article XII, Section 2 because that "method of evaluation excludes, among other factors, location and speculative value which comprise market value." *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 32 Ohio St.2d 28, 33, 289 N.E.2d 579 (1972). Ordinarily, therefore, a present-use method "cannot be made *the* basis for valuation of real property for tax assessment purposes." (Emphasis added.) *Id.*

Although present use generally cannot be the *only* measure of value, in a proper case it may be considered in determining true value for tax purposes. In *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision*, 12 Ohio St.3d 270, 12 Ohio B. 347, 466 N.E.2d 909 (1984), we held that Article XII, Section 2 "does not prohibit altogether any consideration of the present use of a property." *Id.* at 271.

*Id.* at ¶ 13-14.

{¶ 36} Thus, the *Johnston Coca-Cola* court determined that since consideration of present use is not per se improper, "[t]he more pertinent question is whether the BTA considered the property's present-use value to the exclusion of other factors relevant to exchange value." *Id.* at ¶ 15. The court rejected the property owner's argument that the BTA decision was unreasonable and unlawful where the appraisal relied on by the BTA had the stated purpose of determining the fair market value of the property, utilized the sales-comparison and income approaches to do so, concluded the highest and best use of the property as improved aligned with its current use as a large bottling plant, and referred to the property's present use in the context of selecting comparable properties. The court noted that "[a]lthough the BTA referred to the property's present use as a bottling facility, it did so in the context of deciding which comparables identified by the appraisers were 'more analogous' " to the subject property. *Id.* at ¶ 16. Such a determination of which comparable properties identified by competing appraisals were more analogous to the subject property "fell within the BTA's discretion as fact-finder." *Id.* Furthermore, although the parties had extensively briefed the "special-purpose" doctrine, "[b]ecause the BTA did not adopt a present-use valuation," the Supreme Court found no need to decide whether the property at issue was a special-purpose property. *Id.* at ¶ 17.

{¶ 37} In this case, appellant suggests that although an "enigma," the Supreme Court in *Johnston Coca-Cola* meant "a proper case" to consider present use to only include

"situations where factors exist that would otherwise result in the property under consideration being undervalued for tax purposes."  (Appellant's Reply at 4; Appellant's Brief at 25.)  To appellant, unlike *Johnston Coca-Cola*, this is not a proper case to consider present use because "[n]either the Sprout Report nor the BTA decision identifies any special circumstances with regards to this rather ordinary McDonald's restaurant [as opposed to the large bottling plant at issue *Johnston Coca-Cola*] that would cause it to escape fair taxation * * * as the 3,902 sf retail structure that it is at its core."  (Appellant's Brief at 25-26.)  As a result, appellant asserts the BTA's application of *Johnston Coca-Cola* to this case was unlawful.  We disagree.

{¶ 38} First, appellant provides no legal authority in support of his view of what a "proper case" constitutes under *Johnston Coca-Cola*.  (Appellant's Brief at 25.)  As such, he has not met his "burden of affirmatively demonstrating error on appeal."  *Miller* at ¶ 2; *see also* App.R. 9 and 16(A)(7).

{¶ 39} Our own review of case law applying *Johnston Coca-Cola* cases undermine appellant's position.  Specifically, this same argument put forth by appellant has been repeatedly rejected in real property tax appeals that are extremely similar to the instant case.[6]  *See, e.g.*, *Kettering BOE I* at ¶ 90-94 (overruling present-use argument because appraisers do have the ability to consider the present use of a property when determining highest and best use and noting appellant presented inconsistent positions on this topic); *Kettering City School Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 2d Dist. No. 27683, 2018-Ohio-2325, ¶ 45 ("*Kettering BOE II*") (overruling present-use argument because appraiser did not value property solely on its present use and therefore application of *Johnston Coca-Cola* was not problematic, and noting Supreme Court's discussion of the bottling plant features occurred in discussing the highest and best use in terms of the comparable properties of that case and is not a basis to distinguish *Johnston Coca-Cola* from the McDonald's case); *W. Carrollton City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 2d Dist. No. 27679, 2018-Ohio-2322, ¶ 54-56 ("*W. Carrollton BOE I*") (overruling present-use argument because, on this record, it agreed with the BTA that Sprout did not value the subject property solely based on its present use as a McDonald's

---

[6] In all four of the Second District Court of Appeals cases, which all involve real property improved by a McDonald's restaurant, the appraisers, attorneys, and assignments of error are identical to the three cases currently before this court.

restaurant); *W. Carrollton City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 2d Dist. No. 27686, 2018-Ohio-2324, ¶ 54-56 ("*W. Carrollton BOE II*") (overruling present-use argument because, on that record, it agreed with the BTA that Sprout did not value the subject property solely based on its present use as a McDonald's restaurant).

{¶ 40} Moreover, we find no error regarding present use on the facts of this case. Like in *Johnston Coca-Cola*, the appraisal relied on by the BTA here had the stated purpose of determining the fair market value of the property, utilized the sales comparison and income approaches to do so, concluded the highest and best use of the property as improved aligned with its current use as a national fast food restaurant, and referred to the property's present use in the context of selecting comparable properties. Sprout did not value the subject property solely based on its present use as a McDonald's restaurant. *Johnston Coca-Cola* at ¶ 13-14. Under *Johnston Coca-Cola* at ¶ 16, the determination of which comparable properties identified by competing appraisals were more analogous to the subject property fell within the BTA's discretion as factfinder. On this record, we find appellant has not demonstrated the BTA acted unreasonably and unlawfully and abused its discretion in considering the present use of the subject property in determining market value in this manner.

{¶ 41} Accordingly, we overrule appellant's fifth assignment of error.

**D. Highest and Best Use Determination (Fourth Assignment of Error)**

{¶ 42} Under its fourth assignment of error, appellant contends the BTA acted unreasonably and unlawfully and abused its discretion by finding Sprout's highest and best use analysis more appropriate than the analysis proffered by Weis. In this assignment of error, alongside the concept of highest and best use, appellant raises issues related to the special-purpose doctrine and scope of comparable properties.

{¶ 43} "[H]ighest and best use" of a property is "[o]ne crucial element in determining the value of property in the overall market." *Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, 146 Ohio St.3d 173, 2016-Ohio-371, ¶ 34. As defined in *Rite Aid*:

> Valuing a property at its highest and best use means identifying the "reasonably probable and legal use of vacant land or an improved property that is legally permissible, physically possible, appropriately supported, financially feasible, and that

> *results in the highest value.*"   (Emphasis added.)   Appraisal
> Institute, *The Appraisal of Real Estate* 278 (13th Ed.2008).

*Id.*  Thus, the appraiser's determination of highest and best use of a subject property typically influences the appraiser's subsequent choice of comparable properties in formulating an opinion of the market-exchange value of a property.  *Id.* at ¶ 24-27, 34-35; *Johnston Coca-Cola* at ¶ 8, 14-16.

{¶ 44} An appraiser's determination that the highest and best use of a property coincides with its present use for the sake of identifying comparable properties is not the equivalent of finding that the property is "special purpose."  *See Rite Aid* at ¶ 33-42; *Johnston Coca-Cola* at ¶ 8, 14-16.  Rather, the special-purpose doctrine is an *exception* to the general rule of valuing a property for purposes of taxation based on market exchange. *Rite Aid* at ¶ 24, 29.  Under the special-purpose doctrine, a property's use may form the basis of the property's value if it is " 'special purpose' in nature," meaning that it was built for a unique purpose, is in good condition, and is being used for that purpose—both presently and for the foreseeable future.  *Id.* at ¶ 29, citing *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision*, 12 Ohio St.3d 270 (1984).  *W. Carrollton City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 150 Ohio St.3d 215, 2017-Ohio-4328, ¶ 17 (emphasis sic) ("The special-purpose doctrine is applicable when the special adaptation to the owner's currently successful use has been shown to be detrimental to the property's marketability—*i.e.*, the property suffers built-in economic or functional obsolescence or is constructed with superadequacies that make it unattractive in the general market for that type of property.").

{¶ 45} The *Rite Aid* court provides a guide for identifying whether an appraisal is considering the highest and best use of a property (as it relates to comparable properties in formulation value based on market exchange) as opposed to the special purpose of the improvements to the property.  The highest and best use "will usually be expressed in terms of the *general type of use* to be made of such property.  [F]or example, a 'retail store' might be the highest and best use, and since it is currently in that use, the appraisal report might say: 'continued use as a retail store.' "  (Emphasis sic.)  *Id.* at ¶ 35.  "By contrast, in the special-purpose situation one would expect to see: 'continued use by the current occupant *in its ongoing business*.' "  (Emphasis added.)  *Id.*

{¶ 46} One year after its *Rite Aid* decision, the Supreme Court in *Johnston Coca-Cola* again addressed considerations of present use, highest and best use, and the special-purpose doctrine in the context of tax valuation. In that case, the auditor's appraisal identified the highest and best use of the property as "continued use as a bottling plant and distribution center" and selected comparable properties under the sales comparison and income approaches based on that use. *Johnston Coca-Cola* at ¶ 8. The property owner asserted the BTA's decision adopting the auditor's appraisal was unreasonable and unlawful because it considered the present use of the property in determining value. The *Johnston Coca-Cola* court rejected this argument because present use was not the only measure of value used in the appraisal, and the BTA referred to present use in the context of deciding which comparable properties were "more analogous" to the subject property— a determination that "fell within the BTA's discretion as fact-finder." *Id.* at ¶ 16. Finally, the *Johnston Coca-Cola* court noted that although the parties extensively discussed the special-purpose doctrine in their briefs, "[b]ecause the BTA did not adopt a present-use valuation, there is no need for an exception to the general rule—and thus no need for us to decide whether the property at issue here is a special-purpose property." *Id.* at ¶ 17.

{¶ 47} In this case, appellant argues the BTA's highest and best use conclusion was "extremely" too narrow, "essentially labels a generic 3,902 sf, rectangular building as a 'special purpose' property," and "effectively limits the Subject Property to a single user (McDonald's)." (Appellant's Brief at 19, 20.) According to appellant, this contradicts the Supreme Court's precedent defining a special purpose-property and ignores "nearly identical" precedent in *Rite Aid*. (Appellant's Brief at 20.) Appellant additionally argues the BTA contradicted its own decision as discussed in *NWD 300 Spring*, as it adopted an appraisal that relied on a more generalized scope of comparable properties. We disagree.

{¶ 48} First, we disagree with appellant's contention the BTA decision effectively limits the subject property to a McDonald's alone, therefore essentially labeling it a special-purpose property. Both Sprout and Weis agreed the best use of the property was a "[r]estaurant," with Sprout further opining that a "national fast food restaurant" would be the highest and best use. (Weis Appraisal Report at 26; *see also* Tr. Vol. I at 118; Sprout Appraisal Report at 19; Tr. Vol. II at 316.) Nothing in the appraisal or BTA decision limited the highest and best use to its existing current use as a McDonald's. *Rite Aid* at ¶ 35. Rather,

the BTA referred to its present use in the context of deciding which comparable properties were more analogous to the subject property, a determination that fell within the BTA's discretion as factfinder. *Johnston Coca-Cola* at ¶ 16. As such, there is no need for us to consider whether the property at issue in this case is a special-purpose property. *Id.* at ¶ 17.

{¶ 49} Second, we disagree that *Rite Aid* demands reversal on the record of this case. In *Rite Aid*, the property owner of a Rite Aid located in Marietta, Ohio that was not subject to a lease appealed the BOR's retention of the auditor's value. At the BTA hearing, the property owner presented an appraisal that compared the subject property to six general retail sites located in the "general geographic area" of the subject property, although none were in the same county as the subject property. *Id.* at ¶ 7, 9. Five of the six properties were not sold subject to long-term leases. The appraiser for the property owner testified against the applicability of the special-purpose doctrine.

{¶ 50} On the other hand, the county presented an appraisal that compared the subject property to five "geographically distant" drugstores that, unlike the subject property, were all encumbered by long-term leases; no adjustments were made to account for these leases. *Id.* at ¶ 10. Counsel for the county characterized the appraisal as valuing the property "as it actually existed on the tax date *as a Rite Aid*"—"[i]n other words, the county posits a valuation in terms of continued use by Rite Aid *even after a putative sale*, presumably with the drugstore continuing as lessee under a long-term lease." (Emphasis sic.) *Id.* at ¶ 8. Considering the competing appraisals, the BTA noted that the county's appraisal drew from "larger urban areas" of Ohio and adopted the property owner's appraisal. *Id.* at ¶ 16.

{¶ 51} The county appealed, arguing the special-purpose property doctrine applied as an exception to the general rule of determining value under market exchange, thereby permitting comparison of the subject property to properties encumbered by long-term leases without adjustments. The *Rite Aid* court disagreed, finding no evidentiary basis to apply the special-purpose doctrine. Because the special-purpose doctrine was inapplicable to the subject property, the general rule requiring adjustments to properties encumbered by leases applied and yet was not reflected in the county's appraisal. Thus, the *Rite Aid* court found the special-purpose doctrine did not supply a reason to reverse the BTA's

decision to adopt the property owner's appraisal. *Id.* at ¶ 33-42; *Lowe's Home Ctrs. v. Washington Cty. Bd. of Revision*, 145 Ohio St.3d 375, 2016-Ohio-372, ¶ 13.

{¶ 52} This case is distinguishable from *Rite Aid*. Unlike the instant case, in *Rite Aid*, the record indicated the county was attempting to value the subject property as continuing to operate specifically as Rite Aid after a putative sale, and the county argued in favor of treatment of the property as special purpose to support its selection and treatment of comparable properties. The selection of comparable properties in *Rite Aid* was problematic for several reasons distinct from their geographic distance from the subject property: they were located in large urban areas and, more poignantly, were subject to long-term leases which the appraiser did not adjust. Considering all the above, we disagree with appellant's contention that *Rite Aid* is "nearly identical" to this case and the BTA's decision errantly disregarded it. (Appellant's Brief at 20.) This conclusion is consistent with the decisions of the Second District. *See, e.g., Kettering BOE I* at ¶ 78-89; *Kettering BOE II* at ¶ 43-44; *W. Carrollton BOE I* at ¶ 49-51; *W. Carrollton BOE II* at ¶ 49-51.

{¶ 53} Fourth, we disagree that the BTA contradicted its own decision at issue in the *NWD 300 Spring* case. After *Rite Aid* and *Johnston Coca-Cola*, the Supreme Court in *NWD 300 Spring* considered competing appraisals as to the value of a high-rise residential condominium building constructed in downtown Columbus in the Arena District. Before the BTA, the BOE presented the appraisal of Sprout, who based his opinion of value on a sales comparison approach that relied on sales of downtown land parcels intended for mixed-use development. Sprout "defended his choice of comparables by noting that in his view, walkability to athletic and other events made the property at issue even more desirable than the downtown properties that he had used as comparables." *Id.* at ¶ 7. The property owners presented an appraisal from an expert who based her opinion of value on a sales-comparison approach that used other land parcels sold for residential apartment development as comparable properties. The BTA adopted the land value in Sprout's appraisal. The Supreme Court affirmed, noting that Sprout's reference to the mixed-use comparable properties comported with his highest and best use determination in the BOE's appraisal and finding the property owner's objections did not amount to a claim of legal error, and the BTA did not abuse its discretion by finding the BOE's appraisal to be more probative.

{¶ 54} In the instant case, Sprout's selection of comparable properties comported with his determination of highest and best use of the particular subject property here. Tax valuation cases are highly fact specific and contained to their own record—a manner of valuing one property may lack relevance to another property. *W. Carrollton BOE I* at ¶ 47 ("[E]ach case is factually different, that we do not have the record and evidence from the [other] case, and that the BTA's rejection of the valuation provided by an appraiser in one case does not automatically impugn that appraiser's qualifications or his opinion in another case."); *W. Carrollton BOE II* at ¶ 53; *Kettering BOE I* at ¶ 72 (rejecting claim that Sprout utilized inconsistent method in comparison to another case since "appraisers make judgments based on the facts of each case, and those facts will differ"). Considering the factual differences between the two cases, we find no merit to appellant's suggestion that the BTA contradicted its own decision at issue in the *NWD 300 Spring* case.

{¶ 55} As in *NWD 300 Spring* at ¶ 17, we see "no legal basis for second-guessing the BOE's appraiser's professional judgment, nor any reason why the BTA's reliance on it would be unreasonable." Furthermore, on this record, the BTA did not abuse its discretion by finding Sprout's highest and best use analysis more appropriate than the analysis proffered by Weis.

{¶ 56} Accordingly, we overrule appellant's fourth assignment of error.

**E. The Appraisals As Evidence to Support Market Value (First and Second Assignments of Error)**

{¶ 57} Under its first and second assignments of error, appellant contends the BTA acted unreasonably and unlawfully and abused its discretion when it failed to find: appellant's appraisal evidence constituted competent and probative evidence of the market value of the subject property, and appellant met its burden of proof when the record contained reliable and probative evidence to support appellant's market value of the subject property. For the following reasons, we disagree.

{¶ 58} Appellant essentially argues the BTA erred in weighing Sprout's opinion over Weis's opinion for a multitude of reasons. Appellant argues Weis uses a more appropriate methodology with local comparable properties, Sprout's methodology is "flawed," "unsupported," and only appropriate if the subject property is "special purpose," and Sprout did not testify to that effect. (Appellant's Brief at 10, 13.) Appellant submits that Weis's appraisal was clearly laid out whereas Sprout's report failed to include any

qualitative adjustments or market support for its conclusions. Appellant argues Sprout's methodology and analysis produces inconsistent results as evidenced by the BTA choosing Weis's appraisal over Sprout's appraisal in a separate Montgomery County case, *Bd. of Edn. of the Brookville Local Schools v. Franklin Cty. Bd. of Revision*, BTA Case No. 2016-325,[7] involving property including a tractor-trailer parking lot and the restaurant was slated for demolition. Appellant also takes aim at the BTA decision itself, stating the BTA decision had "[s]loppy reasoning" and lacked a "clear statement identifying the 'unique physical nature of the subject property' " even though that was a "key factor" the BTA relied on in choosing Sprout's highest and best use analysis. (Emphasis omitted.) (Appellant's Brief at 11, 12.)

{¶ 59} To the extent appellant raises arguments posed in his fourth, fifth, sixth, or seventh assignments of error (such as consideration of present use, comparable properties, and special-purpose property valuation), we have already addressed those contentions earlier in this opinion and disagreed with appellant's positions. Furthermore, any remaining contentions submitted to support this assignment of error, such as references to the *Brookville* case, qualitative adjustments, and a sales breakpoint analysis, are wholly unaccompanied by legal authority in violation of App.R. 16(A)(7). Our review of case law reviewing these same arguments posed by appellant found no error. *Kettering BOE I* at ¶ 62-66, 70-72; *Kettering BOE II* at ¶ 40-42; *W. Carrollton BOE I* at ¶ 39-41, 46-47; *W. Carrollton BOE II* at ¶ 39-41, 46-47. Considering all the above, appellant has not demonstrated error on appeal in these matters. *Miller*; App.R. 16(A)(7).

{¶ 60} Moreover, we disagree with appellant's overarching challenge to the BTA finding Sprout's appraisal to constitute the most credible, competent, and probative evidence of value. In this case, the BTA's factual findings are supported by reliable and probative evidence in the record in the form of Sprout's appraisal and testimony. *Bd. of Edn. of the Westerville City Schools* at ¶ 26. The determination of Sprout's credibility and the weight to be given his testimony is within the province of the BTA, and, although Weis formulated a different opinion, the BTA is vested with "wide discretion" in evaluating competing appraisals. *NWD 300 Spring* at ¶ 14. *Bd. of Edn. of the Westerville City Schools*

---

[7] The Board of Education of the Brookville Local Schools did not appeal that decision. As provided elsewhere in this opinion, in four other separate Montgomery County tax appeals, the BTA chose Sprout's appraisal over Weis's appraisal, and the BTA decision was upheld by the Second District Court of Appeals.

at ¶ 21; *NWD 300 Spring* at ¶ 13. Although appellant disagrees with the BTA's conclusion, appraisers' differing professional judgments are not grounds to find the BTA abused its discretion by adopting the land value found in one appraisal over the value found in another appraisal. *Id.* at ¶ 16. Overall, we see no legal reason for second-guessing Sprout's professional judgment nor any reason why BTA's reliance on it would be unreasonable. *Id.* at ¶ 17.

{¶ 61} Considering all the above, we find the BTA decision "reasonable and lawful." R.C. 5717.04; *id.* at ¶ 13. Therefore, we must affirm. *Id.*

{¶ 62} Accordingly, we overrule appellant's first and second assignments of error.

## V. CONCLUSION

{¶ 63} Having overruled appellant's six assignments of error, we affirm the judgment of the BTA.

*Judgment affirmed.*

BROWN, P.J., and KLATT, J., concur.

_____